# THE KARR SUPPLY COMPANY

## v.

## JOSEPH KROENIG.

*Filed at Mt. Vernon June 17, 1897—Rehearing denied October 12, 1897.*

1. MASTER AND SERVANT—*master need not take better care of servant than the servant will take of himself.* The relation of master and servant imposes on the master no obligation to take better care of his servant than the servant may reasonably be expected to take of himself.

2. SAME—*master need not assume that servant will adopt hazardous method.* Where a servant calls upon the master for additional help and appliances for performing certain work with which he is familiar, and makes no objection to what is furnished him, the master may assume that the servant, when left to his own selection, will adopt a proper method of performing the work.

3. TRIAL—*when instruction to find for the defendant should be given.* An instruction to find for the defendant should be given where the evidence does not tend to prove the charges in the declaration necessary to a recovery.

*Karr Supply Co.* v. *Kroenig,* 63 Ill. App. 219, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. B. H. CANBY, Judge, presiding.

DILL & SCHAEFER, for appellant.

R. W. ROPIEQUET, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit to recover damages for the loss of an arm while in the employ of defendant, letting a tank down the basement stairs of a building. He obtained a judgment for $3000, which was affirmed by the Appellate Court.

The ground of liability alleged was, that defendant failed to furnish plaintiff and the other servants em-

ployed in the work, with ropes and necessary appliances
and sufficient help to properly and safely perform the
work, by reason whereof the tank slipped and fell upon
plaintiff; that plaintiff had no knowledge of the neces-
sity for said ropes and appliances and additional help,
the work being unusual and out of the regular line of his
employment, and that defendant had full knowledge of
such necessity. At the close of the trial the defendant
requested an instruction to the jury to find for the de-
fendant, which the court refused to give.

The facts as presented to the jury by the plaintiff and
his witnesses were substantially as follows: Plaintiff
had been in defendant's employ for three years, during
which he had done all kinds of work in steam-fitting and
plumbing, in which defendant was engaged, such as lay-
ing pipes, brick work, unloading boilers, helping to put
down boilers in basements and assisting in steam-fitting.
He had helped to put down boilers at five or six places.
For two years prior to this employment he had worked
for another firm of plumbers and pipe-fitters, and in that
service had helped to handle heavy articles. On the
occasion of his injury he and John Dinges were sent by
defendant to the county farm to prepare the foundation
for this water tank, to be placed in the engine-room in
the basement of the building. This basement was reached
by an outside stone stairway of nine steps, with a stone
wall on each side. The tank was cylindrical, about four
feet high and forty inches in diameter, and weighed five
hundred and fifty pounds. After getting the foundation
ready they concluded they could not let the tank down,
and went to defendant's office, where they found the
book-keeper, and plaintiff asked for more men. The
book-keeper sent a man named Pat Cullen, with direc-
tions to see that the job was finished that day. The
three men went out together. Before the tank was let
down plaintiff and Cullen came back to the office. Cul-
len told plaintiff to take a couple of fence-posts for the

1(67—36

tank to rest on. They put the things on a wagon and drove out to the county farm. Defendant had a complete supply of ropes and tackle at its place of business, which plaintiff knew all about and understood the use of. He did not take any of them or ask for any, or for any additional help after Cullen was furnished to assist. When he was back at the office the second time the managing officers of defendant were there, and he said nothing about more help or appliances. No directions were given as to how the work should be done. The tank was lying in the yard at the county farm, and he, with Cullen and Dinges, rolled it to the head of the stairway and undertook to put it down without the posts they had brought or other timbers, ropes or appliances. Plaintiff and Dinges went on the stairway at the lower end of the tank and Cullen took hold of the upper end. When the full weight of the tank was on the steps and about half way down it slipped and caught plaintiff's arm between it and the stone wall, causing the injury. The work could be done by the use of ropes with or without block and tackle. With ropes and tackle it could be let down by one or two men; with a rope it could be let down safely by two, and it would require five men to let it down safely without a rope or other appliance. Some of these alleged facts were disputed on the trial by defendant, but upon this motion the court could not weigh testimony or decide controverted questions of fact.

Counsel for plaintiff states in his brief what it was incumbent on him to prove, in order to recover, as follows: "First, that the defendant master failed to supply suitable appliances or a sufficient number of men to perform the work, and that because of this failure the accident occurred, and that the master had, or ought to have had, knowledge of this fact; and second, that the plaintiff, the servant, did not have the knowledge or had not equal means of knowing with the master, or that, knowing, he was compelled to perform said work without sufficient

means or appliances.—*Goldie* v. *Werner*, 151 Ill. 551." If the evidence did not fairly tend to establish these facts, then, by his own statement, the instruction should have been given.

So far as necessary appliances are concerned, there was an utter lack of evidence of any failure of defendant to supply them. They were supplied and were there in the building, not in use, and plaintiff failed to take them and make use of them. Besides, plaintiff and his fellow-servants did not even use the posts that they took with them for the tank to rest upon, but they undertook to let it down over the uneven surface of the stone steps. The evidence did not prove that the tank could not have been let down safely if they had used the posts and given it an even surface. So far as sufficient help is concerned, the evidence does not show that sufficient men were not furnished if use had been made of ropes or other appliances which were furnished ready for use, or even of the posts which were taken along. Defendant, in furnishing help, was not bound to act upon the assumption that its servants would undertake, without any direction as to how the work should be done, to lower the tank by the most inconvenient and hazardous method. It had a right to assume that they would use a reasonable and proper method when left to make their own selection.

There was no evidence whatever tending to prove that defendant knew, or ought to have known, any more about the number of men required, or the necessary appliances, than the plaintiff. There was no evidence that its managers knew the kind of place the tank had to go down, or its weight, any better than he did. He knew as well as anybody how many men would be necessary according to the methods adopted for doing the work, and after Cullen was sent he did not ask for anybody else nor ask for any appliances. It is a long established rule of law, founded in natural justice, that "the mere relation of master and servant can never imply an obligation on

the part of the master to take more care of a servant than he may reasonably be expected to take of himself." (*Priestly* v. *Fowler,* 3 M. & W. 1.) This rule was quoted and applied in *Pennsylvania Co.* v. *Lynch,* 90 Ill. 333, and was again given expression in *Missouri Furnace Co.* v. *Abend,* 107 Ill. 44, as follows: "The relation of master and servant implies no obligation on the master to take more care of the servant than the servant is willing to take of himself." There was no coercion whatever, but the servants of defendant, by their own choice, did the work in the most difficult and hazardous manner. The law does not impose any such hardship upon a master as to hold him liable for the consequences of their choice without his direction.

The evidence did not tend to prove the charges of the declaration necessary to a recovery, and the instruction should have been given.

The judgments of the Appellate Court and circuit court are reversed, and the cause is remanded to the circuit court.

*Reversed and remanded.*