## John P. Agnew and John McGillen v. Frank Supple.

| 80 | 437 |
|---|---|
| f87 | 439 |
| 80 | 437 |
| r191s | 439 |
| 80 | 437 |
| s99 | 20 |

1. MASTER AND SERVANT—*Master, When Exempt from the Fellow-servant rule.*—Where the master has used ordinary care in the selection of the servant he is not responsible, because of their relation of fellow-servants, for an injury occurring, through such servant's neglect, to another servant.

2. SAME—*Not Bound to Assume that the Servant Will Choose Hazardous Methods.*—An employer is not bound to act on the assumption that his employes will choose inconvenient and hazardous methods of their own volition.

3. SAME—*Master Required to Use Reasonable Care and Diligence.*—The law requires the employer to use reasonable care and diligence in providing suitable and safe machinery and appliances for the use of those engaged in his service, but if he fails in this regard, and the employe discovers that the machinery or appliances are unfit for use, dangerous or insufficient, it is his duty to quit the service. If he remains he does so at his own risk.

4. SAME—*Obligations of the Relation.*—The relation of master and servant implies no obligation on the part of the master to take more care of the servant than the servant is willing to take of himself.

Trespass on the Case, for personal injuries. Error to the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in the Branch Appellate Court at the October term, 1898. Reversed. Opinion filed March 14, 1899.

This is a suit to recover for personal injuries. At the time he received the injury complained of, appellee had been in the employ of appellants for about six weeks, acting a part of the time as foreman over gangs of men engaged in burning brush and excavating dirt from the Drainage Canal. January 6, 1893, the date of the accident, he was directed by one Burns, appellants' general foreman, to turn his men over to some one else, and to help one Morse, a carpenter, who was at work upon a bridge. Appellee says he told Burns that he was not a carpenter and knew nothing about bridge building; but the foreman replied, " Go right along and do what Charlie tells you and you will be all right."

Morse took appellee with him and went to the work. At first, appellee says, he " went to level the stone that was inside the abutment, and after I got them down, Morse says, ' We will get the timber out,' and he took the dolly down and laid it on the runway, and took a cant hook." Appellee says the " runway was about four feet wide and 140 feet long and about ten feet above the ice in the river. The planks rested on some kind of stringers laid across from one abutment to the other." That runway had been constructed " to handle these heavy timbers," and was made level in order " to run across " it the timbers to be used as stringers, which Morse and appellee were engaged in moving when the accident occurred. Appellee describes the " dolly " as made of three-inch material, square, with the roller in the center, " probably fourteen to eighteen inches," and thinks " the roller was four inches in diameter." The first timber was placed on this " dolly " by Morse and appellee, Morse taking the big end. After going with it a few feet upon the runway, appellee says they came to a standstill, and Morse asked one Flynn to give a push, which he did. Appellee testifies, " After we got fairly started, * * * we rolled the timber along quite a distance and, all at once, it went off. The dolly went down on the ice and the timber over on the abutments and remained there. We left that timber there. Then Morse

told me to go on back and get another timber. I did so. He went down to get the dolly on the river. It was lying on the ice, in the river, right below the runway. I suppose he took the same dolly back for the next timber." Going back, Morse and appellee took another timber, about the same size as the first. Appellee says that both timbers were round, and had not been hewn off at all.

They placed this second timber on the dolly in the same way as before, and started across. Again they "got stuck with it," and Morse called to Brown, the timekeeper for appellants, who took hold "and gave a lift," as appellee testifies. Appellee was pushing at the rear end, and Morse was in front. After Brown gave them the lift, he stepped behind appellee, who says that they went ahead, probably thirty or forty feet, and then the timber and dolly went down into the river, the big end going first. Morse says the other end rested on the runway. As the timber went off, the end of it struck appellee's leg, throwing him against an abutment, from which he fell upon the ice below, and for injuries alleged to have been thus caused he brings suit.

John A. Post, attorney for appellants, Samuel S. Page, of counsel, contended only for a reversal of the judgment without a remanding order, and rely alone upon those assignments of error which are germane to that purpose.

Appellee and Morse and whoever assisted in the operating and handling the timber and dolly in question, were, in so doing, fellow-servants. M. & O. R. R. Co. v. Godfrey, 155 Ill. 78; Clay v. C., B. & Q. R. R. Co., 56 Ill. App. 236; I. C. R. R. Co. v. Swisher, 61 Ill. App. 612; Crispin v. Babbitt, 81 N. Y. 516; Hussey v. Coger, 112 N. Y. 614.

Appellee assumed the risk. East St. Louis Ice & C. S. Co. v. Sculley, 63 Ill. App. 147; Jones v. Roberts, 57 Ill. App. 56; Swift & Co. v. Rutkowski, 167 Ill. 159.

There was no duty on appellants to furnish any more men than they did. Karr Supply Co. v. Kroenig, 167 Ill. 563; Swift & Co. v. Rutkowski, 167 Ill. 159.

. Incompetent evidence, admitted at the trial over objection, should be treated as out of the record and should not be considered in support of the verdict    Kiehn v. Bestor, 30 Ill. App. 459.

Appellee must recover upon the very terms of his declaration or not at all.   Ebsery v. C. C. Ry. Co., 164 Ill. 523.

Where there is no competent evidence reasonably tending to sustain the allegations of the declaration, and the trial court has refused to take the case from the jury, the Appellate Court should reverse without remanding.   Practice Act, 81, 3 Starr & C. 3107; Manistee L. Co. v. Union Nat. Bank, 143 Ill. 490; Borg v. C., R. I. & P. Ry. Co., 162 Ill. 348.

. The fact alone of failing to furnish a sufficient or specified number of men to do or assist in doing the work in question, does not constitute a cause of action.   Swift & Co. v. Rutkowski, 167 Ill. 156.

Darrow, Thomas & Thompson, attorneys for appellee.

The servant does not undertake to incur the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery or other instruments with which he is to work.   His contract implies that, in regard to these matters, his employer will make adequate provision that no danger shall ensue to him.   Booth v. Boston & Albany R. Co., 73 N. Y. 38; Northern Pacific R. Co. v. Herbert, 116 U. S. 642; Flike v. Boston & Albany R. Co., 53 N. Y. 549; Shearman & Redfield on Negligence (5th Ed.), Sec. 193.

The tendency of modern authority is clearly toward the view which holds that the master may be responsible for injuries which the employe receives in doing work outside of the employment for which he is hired when the master has been guilty of negligence which, had the work been that contemplated by the original contract, would have rendered him liable, and when the extra work was undertaken by the employe at the command or explicit direction of the master or his agent.   Buswell on the Law of Personal Injuries, Sec. 212; Lalor, Adm'x, etc., v. C., B. & Q.

R. Co., 52 Ill. 401; Banks, Adm'x, v. City of Effingham, 63 Ill. App. 221.

MR. PRESIDING JUSTICE FREEMAN, after making the foregoing statement, delivered the opinion of the court.

The amended declaration contained two counts. The first charged that the injury was caused in consequence of the defendants having furnished an " unsafe, unsuitable and defective dolly." The second count alleges that defendants " failed to furnish any person to assist said boss carpenter and plaintiff," and that " in order to move said timber properly and with reasonable safety along said runway, it was necessary for defendants to furnish for such purpose a number of men, to wit, five men to hold said timber in place upon said dolly, and to prevent said timber from rolling, falling or shifting " while being moved.

Upon a former trial, when the only issue submitted to the jury is said to have been, whether the dolly was defective and unsafe, a verdict was returned in favor of the defendants.

A new trial having been obtained, the Superior Court took the case from the jury upon the question of a defective dolly, and submitted only the issue as to negligence of the defendants in failing to furnish a sufficient number of men to move the timber properly and with reasonable safety. Upon this issue the jury found the defendants guilty, and the latter appeal from the judgment against them.

Appellants' first contention is that appellee and Morse were fellow-servants, and that appellee assumed the risks incident to the particular work in question.

That they were fellow-servants is not denied. Appellee, at the time of the accident, was assisting the carpenter. While the latter was directing the work, the two were, nevertheless, doing it together. It does not appear that the carpenter had any authority except to tell appellee what to do in the way of helping. The rule relating to fellow-servants, where one has power to control and direct others with respect to the employment, is stated in C. & A. R. R. Co. v. May, 108 Ill., on page 299.

In M. & O. R. R. Co. v. Godfrey, 155 Ill. 83, it is said that " where the master has complied with his non-assignable duty of using ordinary care in the selection of a servant to whom such duties are intrusted, for an injury occurring through such servant's neglect, to another servant, the master is not responsible, because their relation is that of fellow-servants."

It is not claimed that Morse was not a suitable man for the work. He and appellee were working together side by side, at the same work at the same time, under the same conditions, and assuming the same risks. Morse had, so far as appears, no power over appellee to compel him to do the work in any particular manner, nor to discharge him if he objected. He did not object, and assumed such risk as was apparent.

The declaration charges negligence in not furnishing more men to help appellee and Morse move the timbers with safety.

There were three men there at the time of the accident—appellee, Morse and Brown. The latter, after having given a push to help start the timber over the "up grade" obstacle, was following along some eight or ten feet in the rear. No call was made on him for assistance in keeping the log from rolling off. Apparently it was not deemed necessary.

It is said by appellee's counsel, " This was a round log, and placed upon a dolly with a flat surface, and the log was not blocked or fastened in any way upon the dolly. It simply lay there loose to be held on by the men who were moving it."

It is not alleged in the declaration that the injury was occasioned by failure to block or fasten the timber upon the dolly, although testimony introduced in behalf of appellee tends to show that such may have been the case. If so, the evidence does not justify recovery on that ground, even if the declaration warranted. There is no evidence that appellants had any notice or knowledge that these men would undertake to shove a heavy round timber,

liable to roll, across a narrow runway some four feet wide, without taking the ordinary · and obvious precaution of blocking it in some way upon the dolly to prevent its rolling off.  The evidence in no way connects appellants with the failure to so block the timber. It is not suggested that they are in any way responsible therefor.  The contention of appellee's counsel seems to be, that because appellee and his co-laborer did not use this precaution to prevent the timber from rolling in obedience to natural laws, and because the two men did not or could not prevent its going off when it began to roll as they were moving it, therefore the employer was bound to furnish men enough to hold it in position, without blocking, by main strength; and this would require enough men to pick it up and carry it, according to some of appellee's witnesses.  In other words, no matter how negligent of an obvious precaution appellee and his co-laborers were, the employer was bound to foresee such negligence and furnish men enough to insure against injury by substituting physical force for the appliance ordinarily used.

We do not understand this to be the law.  An employer is not bound to act on the assumption that his employes will choose inconvenient and hazardous methods of their own volition.  Karr Supply Co. v. Kroenig, 167 Ill. 560.

But, say appellee's counsel, " All of those who have been called as experts testified that it takes more men where the timber is round and where it is not blocked," and " it must be plain that a greater number of men would be required than if the timber had been square or if it had been securely fastened."  Does it require an expert to prove that a round timber will roll more readily than a square one ?  Did it require an expert to inform appellee of that fact ?  And whose fault was it that it was not blocked ?  Certainly not the fault of the appellants, so far as appears from this record.

Appellee testifies that he knew the timber was round; knew that it was liable to roll, and knew there was no blocking.  One of his experts testified, " It is almost im-

possible to handle round timbers on a dolly without having it well blocked and secured." And another says, "There ought to be men on each side of the dolly to keep it in the center or it ought to be blocked." He also says, "There. would be no danger of the timber going off if it was properly blocked. In that case the men would not have to hold it on, but would have to shove. It would take five men for the muscular power necessary."

It is not claimed that the accident was caused by the lack of muscular power to move the timber. According to appellee's witnesses, more muscular power was necessary to hold the timber in place because it was not blocked. Each of the three witnesses called as experts in behalf of the appellee, to testify how many men would be required to safely move the timber, based their testimony in that regard on the assumption that no blocks or chips or wedges were used to hold it.

"The law requires the employer to use reasonable care and diligence in providing suitable and safe machinery and appliances for the use of those engaged in his service, but if the employer fails in this regard, when the employe discovers that the machinery or appliances are unfit for use or dangerous or insufficient, it is his duty to quit the service of the employer; but if he remains, he does so at his own risk. So in this case. If it was the duty of appellants to employ more help in order to render the performance of the labor appellee was employed to perform reasonably safe, and appellant failed in that duty, when that fact was discovered by appellee it was his duty to quit appellant's service; but if he remained he did so at his own risk." Swift v. Rutkowski, 167 Ill. 156.

Here there is no evidence that the employer had failed to provide suitable and safe appliances, no evidence at all indicating that material for blocking or wedging was not at hand. If the jury found that appellee had no knowledge or notice, and by the use of ordinary care and caution could not have had, of the risk or danger attendant upon the work, such finding is not supported by the evidence. Appellee, in his testimony, apparently intends to convey the impression that the first timber "went off all at once,"

before it was intended to, and says, on cross-examination, "I don't know whether we had got this log to the place where it was wanted or not." By his own statement, he knew and had just observed that such a timber would roll off, and roll off suddenly. If this was so, he had notice of the very danger which caused the accident.

The evidence does not show that a sufficient number of men were not furnished, if any precaution had been taken to prevent the timber from rolling by wedging or blocking it on the dolly, and does not sustain the declaration. The injury was not caused by lack of men, but by lack of an ordinary precaution, for which appellants are not responsible.

In Karr Supply Co. v. Kroenig, 167 Ill. 560, it is said: "Defendant, in furnishing help, was not bound to act upon the assumption that its servants would undertake, without any direction as to how the work should be done, to lower the tank by the most inconvenient and hazardous method. It had a right to assume they would use a reasonable and proper method when left to make their own selection."

Appellants had a right to assume that appellee and Morse would use reasonable and proper precautions, or at least, keep out of its way, if the timber was not blocked. As is said in the case last quoted, "There was no evidence whatever tending to prove that defendant knew, or ought to have known, any more about the number of men required, or the necessary appliances, than the plaintiff." The rule is long established, and by this time should be well known, that "the relation of master and servant implies no obligation on the master to take more care of the servant than the servant is willing to take of himself." Missouri Furnace Co. v. Abend, 107 Ill. 44; Karr Supply Co. v. Kroenig, 167 Ill. 560.

The record contains nearly a thousand pages, and there are thirty-five assignments of error. We have not undertaken to review all these alleged errors at length, or discuss all the points made in the respective briefs.

The evidence fails to sustain the declaration, and shows a state of facts such as to preclude recovery against

appellants. No negligence of theirs contributing to the alleged injury has been shown. It is our duty to put an end to useless litigation, and the judgment of the Superior Court is accordingly reversed without remanding. Reversed.