BOKAMP, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, March 5, 1907.

1. MASTER AND SERVANT: Fellow-Servant: Working Foreman. Whether the negligence of a foreman will render the master liable for injuries to a workman under the foreman's orders would depend upon whether the negligent act which produced the injury was done by the foreman while exercising his duties as such; if the injury was caused by his negligence while performing the duties of a laborer, his negligence was the negligence of a fellow-servant and the master would not be liable. Where the foreman of a bridge gang was assisting the workmen to raise a girder by means of clawbars and the clawbar of the foreman slipped so that the girder fell upon and injured one of the workmen, the injury was caused by the foreman while acting in the capacity of a fellow-servant and the master was not liable for such negligence, under the law of Illinois where the accident occurred.

Bokamp v. C. & A. Ry. Co.

2. ———: Safe Place to Work: Proximate Cause. Where a workman on a bridge gang was injured by the falling of a girder upon his leg, while he was engaged with other workmen in raising it by means of clawbars, and the slipping of the clawbar held by the foreman of the gang was the immediate cause of the falling of the girder but where there was evidence tending to show that the work was rendered unsafe by the foreman in removing all braces, and evidence tending to show that the lifting of the girder might have been accomplished safely by some simple appliances, it can not be said as a matter of law that the negligence of the foreman while acting as a fellow-servant in letting his clawbar slip was the proximate cause of the injury and that his negligence in furnishing the workman an unsafe place to work was not the proximate cause of the injury. A proximate cause is an act or omission such that if it had not happened the injury would not have been inflicted; all that is necessary is to show that it had an unbroken connection with the wrongful act.

3. ———: ———: ———: ———. In an action brought for injuries received in such case by the workman, where there was evidence tending to show that the accident could have been prevented by having extra men to hold the girder to prevent its slipping, it was a question for the jury as to whether the defendant was negligent in failing to furnish a sufficient number of men to do the work in safety.

4. ———: ———: Assumption of Risk. A servant assumes obvious risks such as are open and obvious to a man of ordinary observation, but he does not assume risks which may be prevented by the adoption of reasonable measures of precaution nor those caused by the master's negligence.

5. ———: ———: Contributory Negligence. Where a workman of a bridge gang was called from another part of the work to assist in raising a girder in an unsafe place without having assisted in rendering the place unsafe, he was not guilty of contributory negligence in assisting to raise the girder, because he did not have equal means of knowing the condition as the foreman had and had a right to rely upon the superior knowledge of the foreman.

6. NEGLIGENCE: Evidence: Admissions. In an action for injuries received by an employee by being put to work in an unsafe place, evidence that immediately after the accident the master adopted appliances to render the place safe, was inadmissible.

Appeal from Louisiana Court of Common Pleas.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED.

. *N. W. Morrow* and *Scarritt, Scarritt & Jones* for appellant.

The proximate cause of plaintiff's injury was the slipping of the crowbar in the hands of Walter Dent, plaintiff's fellow-servant, for whose negligence the defendant is not liable to plaintiff. (1) This cause of action accrued in the State of Illinois. In that State the common-law rule obtains as to the liability of an employer to an employee for the negligence of the latter's fellow-servant. Gall v. Beckstein, 173 Ill. 187; Fogarty v. Transfer Co., 180 Mo. 490. As to a "working foreman" the dual doctrine, so-called, obtains in Illinois as well as in Missouri, namely, that as to certain acts such a foreman may represent the master, while in the doing of other things he is the fellow-servant of those with whom he is working. If an injury is caused to a fellow workman by such working foreman while performing his duties as a colaborer the common master will not be liable. Garland v. Railroad, 85 Mo. App. 579; Stephens v. Lumber Co., 98 Mo. App. 365; Clay v. Railroad, 56 Ill. App. 235; Railroad v. Massig, 50 Ill. App. 666; Railroad v. May, 108 Ill. 288. As to the method adopted, it is perfectly clear from the evidence that, it could not be found or declared to be the proximate cause of plaintiff's injury for several reasons. Haley v. Transit Co., 179 Mo. 35; Foley v. McMahon, 114 Mo. App. 444; Troy v. Railroad, 99 N. C. 306; Isbell v. Railroad, 27 Conn. 406; Lindvall v. Woods, 44 Fed. 857. (2) The second *non sequitur* in the contention of plaintiff's counsel is that between the adoption of the method of work and plaintiff's injury, a distinct and active cause intervened to make the girder fall, namely, the act of Dent in letting his crowbar slip. Out of a multitude of cases the following may be cited as estab-

lishing the doctrine we contend for, and as illustrating the distinction we are making between proximate and remote cause: Herbert v. Ferry Co., 107 Mo. App. 287; Brown v. Railroad, 20 Mo. App. 222; Reed v. Railroad, 50 Mo. App. 504; Railroad v. Becker, 38 Ill. App. 523; Andrews v. Railroad, 105 N. W. (Iowa) 404; Smith v. Bispham, 52 N. Y. Sup. Ct. 33 (20 Jones & S). (3) It should be noted that the defendant, or its foreman, is not charged with negligence in the distribution of the men actually employed, but only with failure to "employ or provide" a sufficient number. Plaintiff cannot recover for negligence, if any, that is not charged in the petition. Harty v. Railroad, 95 Mo. 368; Railroad v. Cable, 113 Ill. 119; Railroad v. Bell, 112 Ill. 365. In its answer herein defendant set up the defense of assumption of the risk. If that doctrine is still a living principle in the law of the land, then a more appropriate case for its application could not be imagined than the case at bar. (4) It is no longer necessary to speculate upon what the law of Missouri may be on the doctrine of assumption of the risk. It is sufficient to say that under the facts of this record plaintiff could not recover under the following Missouri decisions: Lee v. Railroad, 112 Mo. App. 372; Mathis v. Stock Yards Co., 185 Mo. 434; Chrismer v. Telephone Co., 194 Mo. 189. The decisions in the State of Illinois, however, control in this case (Fogarty v. Transfer Co., 180 Mo. 490), and they are even more favorable to the employer than the Missouri decisions above cited. Simmons v. Railroad, 110 Ill. 344; Karr Supply Co. v. Kroenig, 167 Ill. 560; Coal Co. v. Barringer, 218 Ill. 327; Simmons v. Railroad, 110 Ill. 344; Pennsylvania Co. v. Lynch, 90 Ill. 333; Railroad v. Merckes, 36 Ill. App. 200; Packing Co. v. Rohan, 47 Ill. App. 640; Railroad Co. v. Morrissey, 45 Ill. App. 127.

*John W. Jump* and *Ball & Sparrow* for respondent.

(1) Where the master, or one placed by him in charge of men engaged in his service, personally assists or interferes in the labor being performed under his direction and control, and is, while performing such labor, or interfering with its performance, guilty of negligence resulting in an injury to one engaged in such service, there is no sound principle of law that will excuse or exonerate the master from liability. Hutson v. Railroad, 50 Mo. App. 305; Gormley v. Iron Works, 61 Mo. 492; Dayharsh v. Railroad, 103 Mo. 570; Bridge Co. v. Walker, 48 N. E. 915, 170 Ill. 550. (2) Where one servant is placed by his employer in a position of subordination to, and subject to, the orders and control of another, and such inferior servant without fault, and while in discharge of his duties, is injured by the negligence of the superior servant, the master is liable for such injury. Stone Co. v. Kraft, 31 Ohio St. 287; Fogus v. Railroad, 50 Mo. App. 250. (3) A section foreman is not a fellow-servant with a section man. Russ v. Railroad, 112 Mo. 45; Claybaugh v. Railroad, 56 Mo. App. 634. (4) Where the master gives to a person power to superintend, control and direct the men engaged in the performance of work, such person is as to the men under him a vice-principal, and it can make no difference whether he is called a superintendent, conductor, boss or foreman. For his negligent acts and omissions in performing the duties of the master, the master is liable. Miller v. Railroad, 109 Mo. 356; Stephens v. Lumber Co., 98 Mo. App. 365; Fox v. Packing Co., 96 Mo. App. 173. (5) A foreman cannot divest himself of his responsibility by doing common work with those under him, and thereby enable his employer to escape liability for personal injuries occasioned by his negligence. Haworth v. Railroad, 94 Mo. App. 224; Carter v. Baldwin, 107 Mo. App. 217. (6) The law is that where an injury

to a servant is the combined effect of the negligence of the master and of a fellow-servant the servant may recover. Car Co. v. Laack, 143 Ill. 242, 32 N. E. 285, 18 L. R. A. 215; Railroad v. Gillison, 173 Ill. 264, 50 N. E. 257, 64 Am. St. Rep. 117; Gas Co. v. Myers, 168 Ill. 139, 48 N. E. 66; Express Co. v. Risley, 179 Ill. 295, 53 N. E. 558; Armour v. Golkowska, 202 Ill. 144, 66 N. E. 1037; Railroad v. Shala, 183 Ill. 454. (7) The mere fact that the bridge foreman, Dent, in this case, who had control of the work in hand and exercising such authority, sometimes or generally labors with others under his control, will not of itself exonerate the master from liability. May v. Railroad, 108 Ill. 288; Walker v. Bridge Co., 170 Ill. 55, 48 N. E. 915; Railroad v. Skola, 183 Ill. 454; Gruber v. Coal Co., 138 Ill. 584, 59 N. E. 254. (8) Whether or not the servant assumed the danger while at work on the bridge in question is a question for the jury to decide. Slack v. Harris, 200 Ill. 96; Swift v. O'Neill, 187 Ill. 337, 59 N. E. 416; Stone v. Maseial, 196 Ill. 382. (9) It is the duty of the master, and he owes it to the servant to employ a sufficient number of men to enable them to do the work in safety. Shearman & Redfield on Negligence (5 Ed.), p. 193; Flike v. Railroad, 53 N. Y. 549; Booth v. Railroad, 73 N. Y. 38; Railroad v. Herbert, 116 U. S. 642. (10) And the question whether or not defendant did furnish a sufficient number of men is a question for the jury. Sapples v. Agnew, 191 Ill. 439, 61 N. E. 392.

STATEMENT.—On April 15, 1905, plaintiff, a bridge carpenter, in the employ of defendant, was at work on defendant's railroad bridge two miles south of Pontiac, in the State of Illinois. Plaintiff was on the pier of the bridge, assisting another workman to raise the end of an iron girder with claw bars. Two other employees were engaged in the same manner in raising the end of the parallel girder. The bar in the hands of the inside man slipped from the girder and it turned over and

caught plaintiff's left leg and broke it between the knee and the ankle. The action is to recover damages caused by the injury.

The substantive part of the petition, alleging negligence of defendant, is as follows:

"That in the performance of its duty to keep and maintain its track in a safe condition and in order to maintain the track on said bridge on a level with that on each side of the same, it became necessary to elevate the end of each of said iron stringers or girders which rested on one of the center piers of said bridge, and to place a timber beneath the same; that after the defendant, by its servants and employees, other than plaintiff, acting under the orders and direction of its said foreman then and there in charge of said work, had negligently, carelessly, and recklessly removed all of the ties from said iron girders which would in any way hold, brace or stay the same and, after the removal of said ties, had negligently, carelessly and recklessly failed to brace or stay the same in any other manner, and while plaintiff was engaged under the orders and direction of said foreman in attempting to elevate the end of one of said iron stringers or girders, and while in a position necessary for him to assume that he might execute the orders and directions of said foreman, and while in the exercise of ordinary care for his own safety, defendant, while attempting to elevate the end of said other iron stringer, as a result of its negligence, carelessness and recklessness in removing from said iron stringers or girders all of the ties which in any way would hold, brace or stay the same, and of its negligence, carelessness and recklessness in failing to brace or stay the same in some other manner, after the removal of the ties, caused said iron stringer or girder to turn or fall over and upon this plaintiff, crushing, lacerating, wounding, bruising and breaking his left leg between the knee and the ankle; that said negligence, carelessness and reck-

lessness of defendant consisted in its removal from said iron stringer or girder of all the ties which in any way would hold, brace or stay the same, and in failing, when said ties had been so removed, to brace or stay the same in some other way, and in attempting to elevate the end of said iron stringer or girder at all, in the manner in which it did; and with the appliances used, without first bracing or staying the same in some manner to prevent them from turning or falling over.

"Plaintiff further states that defendant was also guilty of negligence, carelessness and recklessness, directly contributing to plaintiff's injury herein complained of, in failing to employ, or provide if employed, a sufficient number of men to elevate said iron stringers or girders in the manner attempted by it; that while the manner in which defendant attempted to elevate said iron stringers, or girders, was unsafe, negligent, careless and reckless, yet if defendant had provided and furnished a sufficient number and force of men, said iron stringers or girders could have been elevated with greater safety to the person of this plaintiff and others there employed than with the number actually so provided and furnished."

The answer was, first, a general denial, and the following affirmative defenses:

"Further answering, defendant states that the injuries, if any, referred to in the amended petition, were caused by plaintiff's negligence at the time and in respect to the matters alleged in the petition.

"Further answering, defendant states that the dangers of plaintiff's alleged employment as a bridge workman and handler of iron beams, being such as were necessarily and usually incident to that work, were voluntarily assumed by him in entering upon and continuing in that employment, and plaintiff's alleged injuries, if any, were within the risk assumed by plaintiff in his said employment and work."

The reply was a general denial of the affirmative defenses. Verdict and judgment for plaintiff for sixteen hundred dollars, from which defendant duly appealed.

The bridge on which plaintiff was injured had a double track of five spans each. The spans were from eighteen to twenty feet long. The girders were all the same length and were built upon plate iron and angle irons riveted on the top and bottom, and were from twenty to twenty-two inches wide on both top and bottom, about twenty inches deep, and weighed from thirteen hundred to two thousand pounds each. The bridge piers on which the ends of the girders rested were about twenty-four by two feet on the top. Wooden blocks were placed under the ends of the girders to bring them to the proper height for the track. At either end of the girders a cross-tie was let down into them to brace and hold them in place. The cross-ties on the bridge had become rotten, and defendant undertook to re-surface the bridge by putting in new cross-ties and at the same time to spread the girders a few inches to meet a slight change in the gauge of the road made after the bridge was built. On account of the many trains passing over the road, the repairing of the bridge was what the witnesses called "a hurry up job," and the repairing was done by taking up and replacing a span at a time. All the spans of one track and one span on the other had been completed, and the men were working on the seventh span when plaintiff was injured. The manner of doing the work was about as follows: the spikes were withdrawn from the cross-ties, then the rails were lifted a few inches by jack screws and blocked up, and the ties were drawn out. The new cross-ties to go on the bridge were thicker than the ones removed, and for this reason the blocks on which the girders rested on the piers had to be removed and thinner ones put in their place. The blocks on the pier where plaintiff was injured extended across the track and both girders had to be raised at the same time for

the purpose of removing them and inserting the new ones.

Walter Dent was the foreman and superintendent of the work and had under him, engaged in the work when plaintiff was injured, John McAlister, John Hancock, John Switzer and plaintiff, all experienced bridge carpenters. By Dent's orders the girders were raised, or attempted to be raised, by the use of clinch bars five feet long. Dent, Hancock, Switzer and plaintiff, each provided with a bar, took their positions to raise the ends of the girders; Dent and plaintiff between the girders with their backs to each other; Hancock and Switzer on the outside, Hancock facing Dent, and Switzer facing plaintiff. The claws of the bars were thrust under the flange of the girders and an attempt was made to raise them by each man bearing down on his bar with one hand and holding to the girder with the other to prevent it from turning over. As Dent and Hancock were thus engaged at cross-lifting their girder, Dent's bar slipped from under the flange and the pressure by Hancock on his bar threw the girder over and it caught plaintiff's left leg and caused a compound fracture of both bones between the knee and the ankle. Dent, as foreman, had authority to hire and discharge employees. He received the wages of a foreman and had entire charge of making the bridge repairs, choosing his own methods of performing the work. Dent testified that in all defendant's bridges of the same pattern, except this one, the girders or stringers were braced at each end by iron rods or bars; that after the brace-ties were removed and at the time plaintiff was injured, the girders were not braced in any manner whatever. Plaintiff's evidence tends to show that the girders could have been prevented from turning over by two more men stationed at the opposite ends, or by passing a rope around the girder and making it fast to the rail above, and that if a block of wood had been inserted between the claws

of the bar and the flange of the girder, the bar would
not have slipped; also that the girders could have been
raised in perfect safety by jack screws.

There were seven men in the bridge crew under
Dent. At the time plaintiff was injured two of them
had been sent out in either direction from the bridge to
flag trains due to pass about that time. It has been
stated, that the bridge was repaired by taking a span at
a time. The evidence shows that a span could be taken
up, re-surfaced and the track relaid in forty-five minutes
by the method adopted by Dent; that on account of the
great number of trains, including mail trains, that were
daily running over the road, it was absolutely necessary
to do the work with the greatest possible expedition;
that the use of jack screws to raise and spread the gir-
ders would have consumed unnecessary time; that it was
only necessary to raise the girders an inch or two to
make room to remove the old head-blocks and insert new
ones; that the ends of the girders were easily raised by
two men cross-lifting with bars in the manner described,
and that this was the ordinary and usual way of doing
such work, and the evidence tends to show that no one
of the employees engaged in the work anticipated any
danger from the method pursued in doing it, and they
were all, including plaintiff, familiar with that kind of
work, and had been engaged in it for several years. Dent,
as stated, was foreman of the bridge gang and had au-
thority not only to superintend the work, but to employ
and discharge men. He did not labor as a co-employee
all the time but whenever necessary took hold and helped
the men with the work and, as before stated, was en-
gaged as a co-laborer at the time plaintiff received the
injury. It is conceded by both parties that in respect
to plaintiff's right to recover, the laws of the State of
Illinois control, and that the State has not adopted what
is commonly called "a fellow-servant act," that is, an act
making the master liable for an injury to one servant

caused by the negligence of his fellow-servant. Both parties offered in evidence a number of decisions of the appellate courts of Illinois and stipulated that either party might refer to and consider as evidence any and all decisions of said courts which might be deemed pertinent to any point in the case.

BLAND, P. J. (after stating the facts).—1. Defendant contends that as the evidence shows Dent was "a working foreman" and was working as a laborer when plaintiff was injured, under the laws of Illinois, he and plaintiff were fellow-servants, and for this reason defendant is not liable for Dent's negligence, which the evidence shows caused the injury to plaintiff.

In Gall v. Beckstein, 173 Ill. 187, approving Beckstein v. Gall, 69 Ill. App. 616, it was ruled: "A foreman who was assisting another servant of the master in lifting barrels of salt from a wagon, is, with respect to that employment, a fellow-servant with the other employee, and the master is not liable for his negligent acts which are not the result of any exercise of his authority as foreman." At page 191, it is said: "The mere fact that the servant exercising such authority (that of foreman) sometimes, or generally, labors with the others as a common hand, will not, of itself, exonerate the master from liability for the former's negligence in the exercise of his authority over the others. Every case, in this respect, must depend upon its own circumstances."

In C. & A. R. R. Co. v. May, 108 Ill. l. c. 298-9, the court said:

"The true rule on the subject, as we understand it, is this: The mere fact that one of a number of servants who are in the habit of working together in the same line of employment, for a common master, has power to control and direct the actions of the others with respect to such employment, will not of itself render the

master liable for the negligence of the governing servant, resulting in an injury to one of the others, without regard to other circumstances. On the other hand, the mere fact that the servant exercising such authority, sometimes, or generally, labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others. Every case, in this respect, must depend upon its own circumstances. If the negligence complained of consists of some act done or omitted by one having such authority, which relates to his duties as a co-laborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable."

· The facts of the case in judgment bring it clearly within the doctrine of the latter case, and plaintiff cannot recover on the ground that his injury was caused by the negligence of Dent while performing the duties of a workman, and plaintiff's right of recovery, if any he has, must be predicated upon one or the other, or both of the assignments of negligence in the petition, to-wit: that Dent, in his capacity as foreman, was negligent in removing the braces from the girders and in ordering the latter to be raised in the manner he did, without any braces whatever, and that defendant was also negligent in faling to provide an adequate number of men to do the work.

2. The evidence shows that plaintiff was engaged on the ground at the end of the bridge, in framing ties to go on the bridge, during the time the other employees were dismantling the span; that he finished his work and so reported to Dent at the moment they were ready to raise the girders; that Dent ordered him to get a bar and help Switzer raise the end of one of the girders. Plaintiff, therefore, had no hand in producing the

situation the girders were in, but his evidence shows he was an experienced bridge builder, had been working on bridges for defendant something over a year, knew the exact situation of the girders and, like his co-employees, did not anticipate any danger. Nevertheless, the evidence tends to show, and the mere statement of the size, weight and situation of the girders, and of the manner adopted by Dent to raise them, indicates there was danger; that that might happen which actually happened, that is, that a bar might slip and if it did the pressure on the bar in the hands of the man on the opposite side would overturn the girder. The evidence shows it would have been an easy matter and would have taken but little time to have guarded against this danger, by passing a rope around the girder and making it fast to the rail above. Other simple methods of preventing the girders from upsetting were suggested by some of plaintiff's witnesses. Dent, in his capacity as foreman, brought about the situation as it existed when plaintiff was injured and his acts in that regard were the acts of defendant. As representing defendant, it was Dent's duty, if the work was hazardous, to take every reasonable precaution to insure the safety of plaintiff and the other employees, is the law in this State. [Keegan v. Kavanaugh, 62 Mo. 230; Haliburton v. Railway, 58 Mo. App. 27; Haworth v. Railway, 94 Mo. App. l. c. 224, 68 S. W. 111.] It follows that if there is substantial evidence that the work plaintiff was ordered to do was, in the circumstances, hazardous, and we think there is such evidence, did Dent use reasonable precaution to insure plaintiff's safety? All the employees, who testified, stated they did not anticipate any danger from the manner in which they were doing the work. That they knew there was some danger of overturning the girders is conclusively shown by the fact that they undertook to prevent them from doing so, by holding to the girder with one hand while they pressed down on the

bar with the other. Dent, with the rest of them, knew this danger was present, and the means that he and the men working with him used to prevent the girder from upsetting proved to be inadequate. It is contended, however, that the unsecured condition of the girders was not the proximate cause of the injury, but that the proximate cause was the negligence of Dent in letting his bar slip. Many definitions of proximate cause have been attempted.

In Foley v. McMahon, 114 Mo. App. l. c. 444, 90 S. W. 113, quoting from Deming & Co. v. Merchants' Cotton-press, 6 Pickle 353, it is said: "The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which had it not happened, the injury would not have been inflicted, notwithstanding the latter."

In Haley v. Transit Co., 179 Mo. l. c. 35, 77 S. W. 731, the Supreme Court said: "In the opinion of Mr. Justice STRONG in Railroad v. Kellogg, 94 U. S. 469, l. c. 475, may be found, perhaps, as brief and yet as comprehensive an expression of the rule as can well be given. The learned justice there says: 'The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?' "

The immediate cause of the injury was the slipping of Dent's bar, but the allegations of negligence include more than the mere use of crowbars. The petition states in substance, that the defendant negligently furnished plaintiff an unsafe place to work, made so by removing the braces from the girders and the failure to put in temporary ones; that it negligently chose an unsafe way

of doing the work, when a safe one could have been adopted, and that the injury was the result of these concurring acts of negligence. The place to do the work, if unsafe, was made so by the order of Dent, as the representative of defendant and the mode of doing the work was chosen by him as its representative, hence his negligence, if any, as to these matters, was the negligence of defendant, and we are not prepared to say, as a matter of law, that there is no substantial evidence tending to prove these allegations of negligence, and do not think the trial court would have been justified in granting defendant's demurrer to the evidence on the ground that the injury was caused by the negligence of Dent while working as a coworker with plaintiff.

3. There is evidence tending to show the girder could have been prevented from turning over by placing two men at the opposite end to hold it while the men at the other end were raising it with bars. All the men present were engaged in raising the girders, except McAllister, who, on Dent's order, stood in front ready to push out the old blocks and insert the new ones as soon as the girders should be raised high enough to permit him to do so. On this evidence, we cannot say, as a matter of law, defendant furnished an adequate number of colaborers to assist in the performance of the work. The question was peculiarly one for the jury. [Supple v. Agnew, 191 Ill. 439.]

4. Defendant contends that plaintiff assumed the risk of being injured by the girder turning over. Obvious risks are presumed to be known to the employee, and he assumes such as are open and obvious to a man of ordinary observation. [Montgomery Coal Co. v. Barringer, 218 Ill. 327; Consolidated Barb Wire Co. v. Mazwell, 116 Ill. App. 296.]

In Karr Supply Co. v. Kroenig, 167 Ill. 560, it is said: "The relation of master and servant imposes on the master no obligation to take better care of his serv-

ant than the servant may reasonably be expected to take of himself." And the master is not liable, where the servant has equal knowledge with the master, or equal means of knowledge, of defects in tools, machinery, appliances or inadequate number of men to do the work, and is not compelled to do the work, following Goldie v. Werner, 151 Ill. 551.

In the more recent case of Western Stone Co. v. Musical, 196 Ill. 382, at pages 385-6, the court said:

"The rule that the servant assumes the ordinary risks incident to the business presupposes that his master has performed the duties of caution, care and vigilance which the law casts upon him. It is these risks alone, which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes;" and that an order from the master to proceed with the dangerous work would relieve the employee of the assumption of the risk, unless the danger was so manifest that a person of ordinary prudence would not have incurred it. And in Slack v. Harris, 200 Ill. 96, it is said: "A servant does not assume risks which may be obviated by the adoption of reasonable measures of precaution by the master, nor risks which are extraordinary, or extrinsic to the business, nor those of the master's own negligence." Other Illinois cases along the same lines might be cited, but these are sufficient to show that under the evidence, the court was not warranted in saying as a matter of law, plaintiff assumed the risk of receiving injury while obeying the order of his foreman to do the work when, as the evidence shows, the danger was not obvious and glaring and was not anticipated by any of the workmen, and where it appeared that the plaintiff might have reasonably supposed he could work with safety.

5. The answer also pleads contributory negligence, and defendant contends that plaintiff had a thorough knowledge of the place where he was ordered to work

and of the tool with which he was ordered to do the work, and as he did not object to the place or the tool, or make any suggestions to his foreman as to a safer method by which the work might be done, he was guilty of contributory negligence as a matter of law. Section 414, Wood on Master and Servant, is approvingly quoted in Goldie v. Werner, 151 Ill. 551. (p. 556), and in Howe v. Medaris, 183 Ill. 280, at page 290. The section reads as follows: "The servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions: First, that the appliance was defective; second, that the master had notice thereof, or knowledge, or ought to have had; third, that the servant did not know of the defect, and had not equal means of knowing with the master." Plaintiff did not assist in removing the ties and braces from the girders, was not on the bridge when this work was done, and hence did not have equal means with Dent of knowledge of their condition. He was called upon suddenly to get a bar and assist in raising the girders. In these circumstances, we think, even if he did know the girders were not braced, he had a right to rely upon the superior knowledge of Dent and was not, as a matter of law, guilty of contributory negligence.

6.   After the injury plaintiff was taken to Pontiac by Switzer, leaving but three men to work on the bridge. In the cross-examination of two of defendant's witnesses, Hancock and Dent, plaintiff was permitted to prove, over the objection of defendant, that the girders were raised in safety with a rope and jack, the rope being placed around the girders and fastened to the rail above. The tendency of this evidence was to show an implied admission on the part of defendant, that the method adopted to raise the girders when plaintiff was hurt was a dangerous one, and also to show that a safer method could have been adopted. The admission of this evidence was erroneous. [Howe v. Medaris, supra; Alcorn v.

Railroad, 108 Mo. 81, 18 S. W. 188; Mahaney v. Railway, Ib. 191, 18 S. W. 895; Ely v. Railroad, 77 Mo. 34.] For error in admitting this evidence, the judgment is reversed and the cause remanded. All concur.