FRANK WARREN, Respondent, v. THE CHICAGO, BURLINGTON & QUINCY RAILWAY CO., Appellant.

### Kansas City Court of Appeals, May 8, 1905.

1. **MASTER AND SERVANT: Section Man: Straw Boss: Fellow-Servant.** A section man who has been put in charge of a handcar as a straw-boss is held to be a vice principal, and whether vice principal or fellow-servant, his negligence was such in handling the car as to make the master liable.

2. **————: Assumption of Risk: Negligence: Jury.** While a servant assumes the risks incident to his employment he never assumes the risks of his master's negligence, and under the circumstances the question of his assuming the risk was for the jury. Cases considered and distinguished.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*M. A. Low, E. C. Hall* and *Frank P. Sebree* for appellant.

The plaintiff assumed the risk of a collision of the handcar and the regular passenger train, and he was negligent in being upon and running the handcar down the grade and around the curve at a rapid speed, and there was no negligence on the part of the defendant. The demurrers to the evidence should have been sustained. Hammond v. Railway, 83 Mich. 334; Railway

v. Baugh, 149 U. S. 368; Minnier v. Railway, 167 Mo. 99; Cothron v. Cudahy, 98 Mo. App. 343; Kleine v. Freunds, 91 Mo. App. 102; Harrington v. Railroad, 104 Mo. App. 663; York v. Railway, 117 Mo. 405; Burling v. Railway, 85 Ill. 18; McGrath v. Railroad, 14 R. I. 357; Railway v. Modglin, 85 Ill. 481; Railway v. McKnight, 16 Ill. App. 596; Railway v. Leech, 41 Ohio St. 388; Railway v. Wachter, 60 Md. 395.

*Pross T. Cross* and *W. S. Herndon* for respondent.

(1) The point made by the appellant that plaintiff assumed the risk of a collision of the handcar with the regular passenger train, is, we take it, not well taken. (a) Such a defense is an affirmative one and in order to be taken advantage of, must be specially pleaded. The answer of defendant contains no such defense. Railway v. Orr, 84 Ind. 50; Mayse v. Railway, 63 Iowa 562; Nicholas v. Railway, 90 Iowa 85; Walker v. McNeil, 17 Wash. 582; Railway v. Tracy, 66 Fed. Rep. 931; Minnier v. Railway, 167 Mo. 99; Cothron v. Cudahy, 98 Mo. App. 343 cited by appellant. (b) Neither the carelessness of fellow-servant nor a vice principal was a risk which plaintiff assumed. R. S. 1899, sec. 2875; Thompson v. Chappell, 91 Mo. 297; Stubbs v. Railroad, 85 Mo. App. 192. (2) John Stanfield was foreman of this gang of men. The evidence shows that he placed the man "Bob" Reynolds, in charge of the handcar, upon which plaintiff was riding with orders to stop at curves and to look out for trains. He occupied the position of the foreman and had full charge and control of this car and the men who were on the car with him. He was at that time in the place of the foreman, and whether acting as foreman or as fellow servant, defendant is liable for his negligence. R. S. 1899, sec. 2873; Rice v. Railway, supra; Thompson v. Chappell, supra; Shuler v. Railway, 87 Mo. App. 618; Stubs

v. Railway, 85 Mo. App. 192.   (3) Counsel for the appellant assume, in their only point or assignment of error, and in their printed argument, that plaintiff was guilty of negligence himself and that there is no evidence of negligence on part of defendant. We take it that under the whole evidence this assumption is not correct and that the negligence of defendant's agents and servants on the handcar with plaintiff at the time of the injury, is the negligence of the defendant.   Rice v. Railroad, supra; Eberly v. Railroad, supra.

BROADDUS, P. J.—The plaintiff seeks to recover damages as a result of an injury caused by the alleged negligence of the defendant while he was in its employ. The answer is a general denial and that plaintiff's injuries, if any, were the result of his own negligence.   The Chicago, Rock Island & Pacific Railway Company was also made a party defendant.

The facts are as follows:   On the 11th day of November, 1902, the plaintiff was in the employ of the defendant, the Chicago, Burlington & Quincy Railway Company, as one of an extra gang of track and bridge repairers, under its foreman, John Stanfield.   On that day, and for a week or two previous, this gang had been at work at a point on said defendant's track between its stations of Kearney and Robertson, in Clay county, Mo.   The headquarters or boarding place of this gang was at Kearney, and they used two handcars in going to and returning from their work, going out in the morning and returning in the evening.   On this particular evening the foreman stopped the men from work about 5:30 o'clock and starting back to Kearney on their handcars, the foreman and eleven men got on the larger car, which was in front, and the plaintiff and four others on the smaller car, which was behind.   The car on which the foreman rode always preceded the other.   The foreman ordered one of the men, Bob Randall, called by one

witness "Reynolds," to take charge of the hind car, to
stop at curves and to look out for trains. Randall rode
in the brake pocket—that is, he occupied the position on
the car where he had control of the brake and where it
was his duty to look out for trains. Plaintiff was on the
front end of the car, going in, in the middle with his
back in the direction he was going. It had been the cus-
tom to stop at curves and listen for trains and the evi-
dence shows that this had been done on previous occa-
sions by the so-called "straw boss," Bob Randall. Be-
sides the plaintiff, Joe Smith, Theo. Hays and Walter
Rice and Randall were on the hind car. The two hand-
cars with the men on them started for Kearney, after
the orders were given to Randall, the car on which plain-
tiff was riding following the other at some distance.
They proceeded on their way to Kearney until
they approached a curve on one side of which
was a bank and on the other "woods." The
man in charge of the hind car instead of stop-
ping the car at the approach of this curve, as had
been the custom and according to his orders, permitted
the car to run into the curve without making any at-
tempt to stop the car or to order it stopped. The object
of such precaution was to avoid the danger of collision
with the Rock Island train which was due by its sched-
ule time—all of which plaintiff knew. As they ap-
proached this curve, or ran into it, one of the men on the
car with plaintiff, who was on the back end of the car
facing the way it was going, discovered a train—which
was a Rock Island train known as number fifteen—just
ahead of them, gave the alarm and jumped off the hand-
car, as did all the others. The plaintiff being in the mid-
dle of the handcar, working the handlebar, in attempting
to jump off and avoid the train failed to clear the track
and fell in front of the handcar, which ran over his knee
and ankle; in addition to these injuries he received some
cuts and bruises about the head from his fall on the

ground. Immediately after the engine struck the hand-car, and when the train had been stopped, the handcar was lodged on the pilot of the engine. The men on the front car discovered the approaching train in time to get their car off the track—that is, they had gone far enough into the curve to see the train in time and get out of the way.

The plaintiff pleaded and put in evidence rules five and sixteen of time card numbered 67 of defendant, Chicago, Burlington & Quincy Railway Company, for the purpose of showing the duties of the Rock Island employees in charge of the colliding passenger train, and offered evidence showing negligence on its part in failing to give any warning of its approach; but as the trial court set aside the verdict as to it, that matter is not material in this defendant's appeal. There is evidence showing that the foreman, John Stanfield, had placed the man Randall in charge of the car on which plaintiff was riding; that he had given him orders to stop at all curves and look out for trains; that the car had usually stopped at this curve, under the orders of said Randall, to look out for trains; that on this occasion said Randall was on the car in charge of the same and that he failed to perform the duties required of him. The handcar as it approached the curve in question was going down grade at a rapid rate of speed.

The defendant, Chicago, Rock Island & Pacific Railway Company, was running its trains over this track as a lessee of its co-defendant. The petition is drawn and the case was submitted on the theory that if the negligence of either defendant, its agents or servants caused the injury, then the defendant guilty of such negligence was liable; and if both defendants were negligent and the negligence of each concurred in causing the injury, then both defendants were liable. The court sustained the motion for a new trial as to defendant Chicago, Rock Island & Pacific Rail-

way Company and overruled it as to the other defendant. The defendant, Chicago, Burlington & Quincy Railway Company, then filed a motion to strike the judgment from the record, which was also overruled.

At the close of plaintiff's evidence, and also at the close of all the evidence on both sides, defendant offered a demurrer to plaintiff's case. The sole point made by defendant on its appeal is that its demurrer should have been sustained on the ground that, the plaintiff assumed the risk of a collision of the handcar and the regular passenger train; that he was negligent in being upon and running the handcar down the grade at a rapid rate of speed; and that there was no negligence on the part of defendant. If there was negligence upon the part of defendant, it was liable—whether or not plaintiff assumed the risk. But if plaintiff's injuries were the result of his own negligence, he was not entitled to recover, in any event, under the facts of the case. The evidence is that the collision was the result of disobedience of orders upon the part of Randall—who was in charge of the handcar at the time—in not stopping and looking out for the approaching train. And it can make no difference whether he is to be treated as vice-principal or co-laborer, it was through his negligence that plaintiff was injured. In either event, under the law, it was negligence for which the master is liable.

Defendant's argument is that Randall, like plaintiff, was a day laborer; and, as such, had no authority or control of plaintiff. That both of them knew all the facts known to the other about the track, the handcar and the approaching train; and that both were reckless and negligent in running the car so fast down grade that it could not be stopped when the train came in sight. It was necessary in order to carry the laborers to their destination that they should be loaded on two handcars. The foreman, with a part of the men, got upon one; the plaintiff, with Randall and others, upon the other. It

is also apparent that it was necessary that some one should be in charge of the latter and in control of the men. This duty was imposed by the foreman upon Randall, and it was shown that he was in charge at the time in question and directing the men and the movements of the car. He was directed to stop at the approach of curves in the track and to look out for approaching trains. This duty he neglected on the day of the disaster. It is true, plaintiff's knew that Randall was disregarding his instructions and that there was danger. But it is not suggested in what way he should have acted in order to have avoided such danger. The car was going down grade at a rapid rate of speed approaching the curve. It is true, he might have ceased working the handles, but as he had no control over the others working with him, we do not see how that would have availed him. He could not leave the car with safety at the rate of speed it was going. He was in a situation of peril, brought about by Randall who was in charge. And his safety, as well as that of the others, was dependent upon the acts of said Randall. The latter by his careless disregard of his orders, without any intervention upon the part of plaintiff, brought about the conditions resulting in plaintiff's injury. Randall was clothed with such authority for the time being as constituted him a vice-principal. It does not seem to us that there can be any doubt upon that question.

If it be conceded that plaintiff assumed the risks incident to the occasion, it does not follow that he is thereby precluded from recovery. Hamman v. Coal Co., 156 Mo. 232, was a mining case where the deceased, an experienced miner, must have known that the condition of the roof of the mine was such as would cause it to fall at some time, and it was held: "Whether or not deceased assumed the risk of the roof falling upon and injuring him was, under the circumstances, for the determination of the jury." The rule is so expressed in

Shearman & Redfield on Negl. (5 Ed.), sections 211-212. See also Minnier v. Railway, 167 Mo. 99. And the same rule was applied where a plaintiff had knowledge that his fellow servant was incompetent and negligent, and who was injured by reason of the negligent act of such servant. [Francis v. Railway, 127 Mo. 658.] The same principle was also announced in Williams v. Railway, 109 Mo. 475, and in Northern Pac. Ry. Co. v. Mares, 123 U. S. 710.

It is true there is a class of cases which hold that, where the risk is incident to the employment of the servant, the master is not liable under such circumstances. [Minnier v. Railway, supra; Cothron v. Packing Co., 98 Mo. App. 343; Kleine v. Freunds, 91 Mo. App. 102; Harrington v. Railway, 104 Mo. App. 663.] And it is held that, where the danger is obvious and continous, the servant assumed the risks and the master is not liable. [Fugler v. Bothe, 117 Mo. 475.] The distinction is perhaps clear enough, but the difficulty lies in the application of the law to a given state of facts. But no case can be found for authority that the servant under any circumstances assumes the risks of the master's negligence.

We think the plaintiff made out a good case and was entitled to recover. Cause affirmed. All concur.