## JOSEPH WILEY, Respondent, v. ST. JOSEPH GAS COMPANY, Appellant.

### Kansas City Court of Appeals, June 29, 1908.

1. **MASTER AND SERVANT: Fellow-Servant: Nature of Labor.** The character of the act determines the relation of the actor to the injured servant, and if the act is in pursuance of the delegated authority it is that of the master, but if it is that of a mere laborer it is the act of the servant.

2. ———: ———: **Foreman: Rule.** Where the foreman acts contrary to the rules of the master the servant has the right to assume that he was acting, at the time in accord with the purpose of the master; and it is not for the servant to proceed in a manner that he might consider acceptable to the master or with his understanding of the rules, to the disregard of the foreman in charge.

3. ———: **Negligence: Assumption of Risk: Instruction.** The servant does not assume the risk of the master's negligence, and though he knows 'the peril of his undertaking, yet if an ordinarily prudent person in the exercise of ordinary care might undertake it with reasonable expectation of safety, he is not chargeable with negligence; and an instruction on the assumption of risk is held properly refused.

4. **WITNESSES: Expert: Instruction: Commentary.** An instruction though a commentary on the evidence was rightly given, since it had been sanctioned by the Supreme Court.

Appeal from Buchanan Circuit Court.—*Hon. Chesley A. Mosman,* Judge.

AFFIRMED.

*Vinton Pike* for appellant.

(1)    While making the joints with Wiley's assistance, he was not performing a duty the master owed any servant, he and Wiley were on equal footing accomplishing by a joint act the common object of their employment.    Both were connecting pipe from which gas was escaping, and each knew what they were about.

Stephens v. Lumber Co., 110 Mo. App. 405.   (2) So
if the escape of the gas in large quantity was caused
by Wiley's failure to promptly present his section of
the pipe to be attached after Chapman had removed
the cap or plug, and some other servant was injured by
the explosion, neither Wiley nor the servant could re-
cover.    Chapman's act must be judged by the same
rule.    Anglin v. Am. Const. & T. Co., 96 N. Y. Supp.
49, affirmed by Court of Appeals, 79 N. E. 1100; Guil-
martin v. Solvay Process Co., 101 N. Y. Supp. 118;
Loughlin v. Brassil, 79 N. E. 854; McConnell v. Dock
Co., 187 N. Y. 341, 80 N. E. 190; Connolly v. Const. Co.,
102 N. Y. Sup. 599; Pitts v. Center, 98 S. W. (Ky.)
300.    (3)   The defendant had provided means to pre-
vent the flow of gas.    It could do no more, unless it
stood over the servants and made them use the means
—in other words, did for them the work they were
hired to do.    Loughlin v. Brassil, 79 N. 7. 854; Guilmar-
tin v. Solvay Process Co., 101 N. Y. Sup. 118.    (4)
Chapman could act in the dual capacity of foreman
and fellow laborer.    He had sued for injury to himself,
and had been nonsuited.    It was his interest in his
own case to show that he was merely a laborer like all
the others at work on the same job.    On this trial he
had to maintain some consistency.    His position was
like that of Whalen in the case next cited.    Hawk v.
Lumber Co., 166 Mo. 128.    (5)   Chapman's duty in
connecting pipes was not personal to the master.    It
was not the master's duty to turn off the gas by means
of the stopcock, but to provide the means.    The cause
of the accident was not a failure to provide means, but
the failure of the servants to use the means provided.
McConnell v. Dock Co., 80 N. E. 190; 187 N. Y. 341;
Connolly v. Const. Co., 102 N. Y. Sup. 599; Lee v. Gas
Co., 91 Mo. App. 612; Anderson v. Box Co., 103 Mo.
App. 387.

*J. B. O'Connor* and *James W. Boyd* for respondent.

(1) Enright was appellant's general superintendent, Chapman was assistant superintendent and foreman; and both ordered the stopcock, open, to be covered up with earth, so that it could not be used to check or stop the outflow of the gas. (2) Appellant's contention is that Chapman was not a foreman. The evidence conclusively shows that he was. He ordered the men where to work, how to work, what to do, discharged them; and, indeed, was assistant superintendent. Hollwig v. Telephone Co., 195 Mo. 156; Fogarty v. Transfer Co., 180 Mo. 504; Bane v. Irwin, 172 Mo. 316; Donnelly v. Milling Co., 103 Mo. App. 349. (3) That natural gas is highly explosive and exceedingly dangerous, is a fact known to us all. Sipplle v. Gas Light Co., 125 Mo. App. 34.

BROADDUS, P. J.—The plaintiff seeks to recover damages for injuries received as the result of the alleged negligence of the defendant. The defendant is a corporation which supplies illuminating and fuel gas to the inhabitants of the city of St. Joseph, Missouri. On the 17th day of October, 1906, plaintiff was in the employ of defendant as a common laborer, and engaged with other employees of defendant in putting in gaspipes to form a connection between the gas main of defendant and a residence located at number 1305 Felix street. Connection was begun at the gas main in the street, and carried forward by sections towards the residence. In the progress of the work it became necessary to dig a trench across the sidewalk space. In this space a stopcock had been placed in the pipe being laid to prevent the escape of gas from the pipe, but it was shown that this stopcock was left open and the trench filled up, and that the extension was continued by laying of sections until the building was reached and it was while plaintiff and a Mr. Chapman were at work on the inside

of the building that an explosion occurred which caused plaintiff's injury. Chapman was under the floor of the house working at the pipes while plaintiff was on the floor above assisting him. It was shown that instead of using the stopcock to shut off the gas Chapman inserted a plug in the end of the pipe, or a cap on the end to prevent the gas from escaping, but in making connections they would have to be removed during which time more or less gas would escape. The negligence if any was the filling up the ditch and covering up the stopcock without first having attached a stopbox to it reaching to the surface of the ground by means of which the stopcock could be utilized to turn on or off the gas flowing through the pipe. It was not shown what caused the gas to explode, but it was explained that it could have ignited only by the application of a light—by fire.

A Mr. Enright was the superintendent of the defendant and Chapman was its foreman and had supervision of the work in question in the absence of Enright. Mr. Enright testified that it was the usual custom in all such cases to attach a stopbox to the stopcock before a trench was filled in, so that the workman could at all times control the flow of gas and prevent it from escaping, but he did not remember giving an order to that effect in the instance under consideration.

The contention of defendant is that as defendant had provided the means to prevent the flow of gas, it could do no more unless it stood over the servants and made them use the means. Had the means been provided the contention of defendant would be tenable, but the stopcock provided for the purpose did not prove efficient for the reason that it could not be used without a stopbox properly equipped. If it was a mere matter in the detail of the work to put on the stopbox then perhaps defendant would not be liable, without the work was done under the supervision of some one in

authority under the defendant. The work was done however under the direction of Chapman who caused the trench to be filled in and the stopcock covered up so it could not be used. Chapman was engaged in the work, knew that the gas would escape when the plug was removed from the open end. As foreman his knowledge was that of the defendant. It is true that Chapman was acting in the dual capacity of foreman and workman, but because he was so acting did not prevent his knowledge and his acts from being that of his principal. Because he was both master and servant would be no excuse for his want of care as to those matters over which it was his duty to his master to supervise. "It is the character of the act itself that determines the relation of the actor to the injured servant. If it is one performed in the exercise of delegated authority it becomes the act of the master; and if on the other hand, if it arises from mere colabor it remains the act of the servant." [Stephens v. Lumber Co., 110 Mo. App. l. c. 405.]

The plaintiff was injured not as the result of Chapman's negligence as a workman but by reason of his negligence as foreman of defendant in the general supervision of the work. But it is claimed that Chapman was not representing the master in the detail of the work; that the workmen all knew the method they were pursuing was against the master's rule and attended with some hazard; and that Chapman nor any other workman could neglect to use the stopcock. The weakness of the proposition is that it ignores Chapman as foreman, as the *alter ego,* and makes him a workman for all purposes. If the foreman in charge of the work proceeded, not according to the ordinary rule of the superintendent, but in a different manner the workman had the right to assume that he was acting at the time in accord with his superior officer, and it was not for them to proceed in the manner they might consider

would be acceptable to the superintendent, and in accord with their understanding of his rules in such cases, and thereby disregard the direction of the foreman in charge of the work. No authority can be found to sustain such a course, which would have the effect of dispensing with the necessity of a foreman and leave to each workman to pursue his own course, which might produce unexpected and undesirable results. The sum of defendant's argument is, that plaintiff disobeyed his master the superintendent in assisting in filling in the ditch although he obeyed his master the foreman in so doing. It was said by the greatest of all law givers that a man cannot have two masters. But the plaintiff had but one master, the defendant corporation, which was present in the person of Chapman the foreman who stood for and in the place of the superintendent; and when he obeyed the directions of Chapman, he was following the directions of the superintendent. A corporation may be in many different places at the same time. Each and every agent with authority is the corporation for the purpose on hand. And these agents engaged within the scope of their authority however many they may be and whenever and wherever at work each is the *alter ego* of the corporation. It is futile to contend that the plaintiff was bound to conform to the general rules of the superintendent while under the direct orders of the foreman present.

The defendant asked the court to instruct the jury, "that if plaintiff knew the gas was not turned off at the stopcock and that it was escaping while Chapman was making the pipe connection, and with such knowledge continued to work under such conditions he assumed the risk of an injury from an explosion of the escaping gas, and cannot recover." The court refused the instruction and rightfully. It has been so often decided by the courts of the State that the servant does

not assume responsibility for the master's negligence that we do not consider it necessary to refer to such decisions. And it has been decided many times by the courts of the State and such is the latest expression on the subject that notwithstanding the servant may know the peril of his undertaking, yet if it be such that a person of ordinary prudence in the exercise of ordinary care might undertake it with reasonable expectation of safety he is not to be charged with negligence. And the question is one for the jury, unless the peril is so glaring and impending that a person would not venture upon the work, in which case it becomes a question of law for the court. We do not think the undertaking was such as the court was justified in declaring that plaintiff was not, as a matter of law, entitled to recover. He might well believe that if the defendant's foreman a man placed above him on account of his superior judgment and experience, considered the work safe under the circumstances he might also consider it safe.

The defendant finds fault with the plaintiff's fifth instruction. It reads: "The court instructs the jury that they are not bound to accept as true the opinion of expert witnesses, but the jury may give the opinion of expert witnesses such weight as the jury may under all the evidence in the case consider them entitled to, or the jury may altogether disregard such opinions, if the jury from all the facts believe such opinions to be unreasonable." The criticism is just in that it amounts to a commentary on the evidence, but as the instruction has been sanctioned by the Supreme Court there was no error in giving it to the jury. [Hoyberg v. Henske, 153 Mo. 64; Markey v. Railroad, 185 Mo. 348.]

The explosion was the result of the grossest negligence on the part of the defendant, and the injuries he received were severe and permanent. One side of the building was blown down and plaintiff was thrown out

of the building onto a porch eight feet distance. We believe the judgment was for the right party and ought to be affirmed. Affirmed. All concur.