## J. H. GILLESPIE et al., Appellants, v. LOUISVILLE AND NASHVILLE RAILROAD COMPANY et al., Respondents.

**Springfield Court of Appeals, June 6, 1910.**

1. **CARRIERS: Animals Contracting Disease While en Route: Liability of Carriers: Sufficiency of Evidence.** Plaintiffs sued several railroad companies for damages to a shipment of jacks, claiming that by reason of negligence of defendants the animals were permitted to contract pneumonia. The evidence is examined and held insufficient to show that any of defendants was negligent, or that the proximate cause of the jacks contracting the disease could be attributed, under the evidence, to any act or omission on the part of defendants.

2. **————: ————: ————: Time of Contracting Disease.** In an action against several carriers jointly for damages to a shipment of jacks which plaintiffs claimed contracted pneumonia on account of being permitted to remain in the car on the track an unreasonable time, there was no evidence tending to show how long it takes pneumonia to develop after exposure, nor tending to prove at what time the infection was communicated to the animals; that, in order for the plaintiffs to recover, it was necessary for them to have furnished some evidence tending to prove that pneumonia could have been contracted and developed within the time the animals were in the hands of the carriers and, for failure of this proof, plaintiffs were not entitled to go to the jury.

3. **————: Shipment of Live Stock: Inadequacy of Service.** In an action for injury to a shipment of jacks, claimed to have been caused by an unnecessary delay at a terminal station, during which delay the jacks contracted pneumonia, the evidence failed to show that the one live stock train a day running into St. Louis over defendant's road was not sufficient to answer all purposes.

4. **NEGLIGENCE: Proximate Cause: Unanticipated Consequence.** While the negligent act must in all cases be the proximate cause of the injury, in order to hold the defendant responsible therefor, yet if the injury follows as the direct consequence of the negligent act, it cannot be said that the defendant is not responsible because the particular injury could not have been anticipated.

Appeal from the Circuit Court of St. Louis City.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*E. H. & C. P. Hatcher, Chilton Atkinson* and *Wm. Baird* for appellants, and *Seddon & Holland* of counsel.

(1) Where a carrier undertakes to transport live stock it, as well as the connecting carriers, are liable for damages resulting from unreasonable delay. Clark v. Railroad, 55 Mo. 167; Patterson v. Railroad, 79 Mo. 296; Tucker v. Railroad, 50 Mo. 385; Griffin v. Railroad, 115 Mo. App. 549; Ratliff v. Railroad, 118 Mo. App. 644; Smith v. Railroad, 112 Mo. App. 610. (2) Proof of delay throws upon the carrier the duty of accounting for same, or showing it was not due to negligence. Levering v. Railroad, 42 Mo. 88; Bosley v. Railroad, 54 W. Va. 563. (3) Evidence of unusual delay and damage resulting therefrom raises a presumption of negligence against the carrier and thus casts upon the carrier the burden of establishing its freedom from negligence. Hance v. Express Co., 48 Mo. App. 179; Dawson v. Railroad, 79 Mo. 296; Tucker v. Railroad, 55 Mo. 385; Ball v. Railroad, 83 Mo. 574; Vaughan v. Railroad, 62 Mo. 461; Lackland v. Railroad, 101 Mo. App. 420; Cash v. Railroad, 81 Mo. 109; Sloop v. Railroad, 98 Mo. App. 605; Griffin v. Railroad, 115 Mo. App. 549; Ratliff v. Railroad, 118 Mo. App. 644; Smith v. Railroad, 112 Mo. 610; Otis v. Railroad, 112 Mo. 622. (4) It is the duty of a carrier who undertakes a shipment of live stock to acquaint himself with the dangers incident to handling same and to use proper precautions to guard against such dangers. See authorities under preceding head, and also following: Railroad v. Smisson, 73 S. W. 42; Floeser v. Railroad, 94 Wis. 571; Dunn v. Railroad, 68 Mo. 268; Minter v. Railroad, 82 Mo. App. 130.

*Watts, Williams & Dines,* for Terminal Railroad Association, respondent.

It was the duty of the trial court to sustain the demurrer to the evidence because the allegation of negligence against the Terminal Railroad Association was not established, and because the evidence failed to establish any act or omission of the Terminal Association as the approximate cause of the disease of which the animals died. Hunt v. Mo. Pac., 89 Mo. 607; Dunham v. Joyce, 129 Mo. 5; Carrier v. Railroad, 175 Mo. 470; Hyde v. Railroad, 110 Mo. 272.

*Bryan & Christie* and *H. R. Small,* for Louisville & Nashville Railroad Company, respondent.

GRAY, J.—Plaintiffs allege in their petition that they were a co-partnership doing business under the firm name and style of J. H. Gillespie and Sons, and that the defendants were railroad corporations; that on the 21st day of February, 1903, they shipped via the respondent, Louisville & Nashville Railroad Company, from Columbia, Tenn., to Kansas City, Mo., fourteen jacks and one horse; that said stock, while being shipped, passed into the control of the respondents, Terminal Railroad Association of St. Louis, and the Wabash Railroad Company; that by reason of the combined and joint negligence of the defendants, the animals were permitted to contract a disease, from which a number of them died and others were damaged, and for which judgment was demanded.

The petition was filed in the office of the clerk of the circuit court of St. Louis, on the 3rd day of September, 1904, and in due time all the respondents answered. At the conclusion of the testimony, each of the defendants offered, and the court gave, peremptory instructions to the jury to find for the defendants, upon the giving of which the plaintiffs excepted, and by permission of court, took a nonsuit with leave to file a

motion to set the same aside. In due time the motion was filed, and was, by the court, overruled, and the plaintiffs appealed to the Supreme Court. Under the recent act of the Legislature increasing the jurisdiction of the courts of appeals, the Supreme Court transferred the case to the St. Louis Court of Appeals, and that court transferred the cause here.

The testimony in behalf of the plaintiffs, shows that plaintiffs on the 21st day of February, 1903, loaded the animals in a "Palace Car" at Columbia, Tenn., intending to ship them to Kansas City, Mo.; that in due time the car containing the animals arrived at East St. Louis, and was delivered to the Terminal Company about midnight, February 22nd, and was left standing on the tracks at a point about two hundred yards from the Mississippi river, until about two o'clock in the afternoon of that day, when it was taken across the Mississippi river and delivered to the Wabash Railroad Company, and remained on the west bank of the river until about nine p. m., when it was placed in a train and started for Kansas City.

The jacks were strong and healthy when loaded at Columbia, Tenn., and remained apparently in that condition until after they had been transferred to the Wabash Railroad Company, when it was noticed that they stopped eating and braying. The evidence shows that as long as the animals eat and bray, they are in a healthy condition. During the time they were standing on the tracks of the Wabash Railroad Company, they commenced to cough, quit eating, and did not bray very much. When the car arrived in Kansas City, nearly all of the jacks were sick. They were immediately taken from the car and removed to a barn, and commenced to die with pneumonia, and the result was that seven died and the others were so injured by the disease that plaintiffs only realized about seven hundred dollars for their carload of jacks.

The defendants filed separate answers pleading different contracts of shipment, special rates, releases, etc., but in view of the fact that we have come to the conclusion that plaintiffs were not entitled to recover on the merits, it will not be necessary to further notice the special defenses.

The testimony shows that the weather in Columbia, Tenn., was as cold at the time the jacks were shipped, as it was while they were on the car in St. Louis; that the palace car is a special car provided for shipping stock. It is provided with stalls so that the stock can be fed, watered and bedded in the same manner as if standing in a barn. In addition to the above conveniences, the car is so arranged that it can be entirely closed and the air shut out.

The plaintiffs testified that they accompanied their stock and that while the car was standing in the railroad yards, it did not occur to them that there was any danger of the animals contracting pneumonia. The plaintiff, J. H. Gillespie, testified that he had been handling such stock for many years, and had shipped the same in all kinds of weather, and he never had anything of the kind to occur before; that he noticed nothing wrong with any of the animals until they had been delivered to the Wabash Railroad Company, and then they commenced to cough and kept getting worse, with the result above mentioned.

The testimony shows that the Wabash Railroad Company only had one freight train from St. Louis to Kansas City that carried stock, and that train left about nine o'clock in the evening, so that the failure of the Terminal Railroad Company to transfer the stock to the Wabash Company for the period of twelve hours after the stock was delivered by the Louisville & Nashville Railroad, did not delay the shipping of the animals from St. Louis to Kansas City.

It is claimed by the plaintiffs that the animals contracted pneumonia while standing in the yards of the

Terminal and Wabash Railroad Companies at St. Louis, and that the disease was contracted on account of the negligence of the defendants in permitting the animals to stand so long on the tracks, and that it was the duty of the defendants to have handled the car without the delay. It is also claimed that the Louisville & Nashville Railroad Company should have ascertained the time when the Wabash freight train carrying stock, departed for Kansas City, and so arranged the shipment as to have had the stock delivered in St. Louis with reference to the departure of the Wabash trains. There was no evidence in the case that the needs or demands of the railroads were such that a greater number of trains were needed, and no testimony was offered to show that the one train a day carrying live stock from Columbia, Tenn., to St. Louis, or from St. Louis to Kansas City, was not sufficient to answer all the purposes. It was further claimed that the stock should have been unloaded at St. Louis when it was learned it would not be moved until night, and that on account of the failure to so unload the stock, the disease was contracted. There was evidence offered to prove that stock was more likely to contract disease when standing in a car on side tracks, than when the car was kept in motion, and this is upon the theory that while the car is kept in motion, the muscles of the animals are exerted in keeping their footing, and in protecting themselves from being jostled about by the movement of the train.

The plaintiffs were experienced stock men, and they were in the car with the animals all the time the same was standing in St. Louis, and the fact that their stock was likely to contract pneumonia, did not occur to them. As above stated, the jacks were in a car specially provided with all the conveniences of an ordinary stable, and it cannot be said from the evidence, that the animals were likely to contract disease, by standing in this car, equipped as it was under the cir-

cumstances, was something that the parties, by the exercise of proper diligence could have contemplated.

The record is without evidence tending to prove how long it takes pneumonia to develop after exposure, and there is no testimony whatever, tending to prove at what time the infection was communicated to the animals, and therefore, we cannot say but what the animals would have had pneumonia if they had never been delivered to the first carrier at Columbia, Tenn.

In order to find against the Wabash Railroad Company, under the evidence, it would be necessary for a jury to say that the animals were all right when delivered to that company on the afternoon of February 23, and that during the time they were standing in the car on the west side of the river, they became exposed and from which pneumonia developed before the car reached Kansas City. In order to find against the Terminal Association, it would be necessary for the jury to find that the animals were well when delivered to that company, and on account of the delay and in permitting them to stand in the car on the east bank of the river, they became exposed to the disease, which afterwards developed. And to find against the Louisville & Nashville Railroad Company, it would be necessary to find that after the animals were delivered to that company, they became exposed, resulting in the disease developing, and the damages sued for.

We do know from common experience, that some diseases develop within a certain period, and that the time is not the same in all cases, or with all diseases, but we do not know from such experience, and cannot take judicial notice of the fact that pneumonia develops within twenty-four or forty-eight hours after exposure.

Counsel for plaintiffs have cited us to a number of cases where damages have been recoverd for the loss of live stock caused by delay of the carrier in shipping the same. We have examined those cases, and they throw no light upon the point now under discussion.

Some of the cases were shipments of fat hogs in hot weather, and the testimony showed that the animals were permitted to stand in the yards of the carrier during extremely hot weather, for a number of hours, resulting in their death, and showing that the death was caused by the heat.

In the case now under consideration, the animals were not frozen or overheated, and received no external injuries, and in order for the plaintiffs to recover, it was necessary for them to have furnished some evidence tending to prove that pneumonia would develop within the time which the evidence in this case shows elapsed after they were delivered to the carrier at Columbia, Tenn.

In passing upon the plaintiffs' testimony, it was the duty of the trial court to give them the benefit of all reasonable inference that could be drawn from the evidence introduced in their behalf. [Doner v. Ingram, 119 Mo. App. 156, 95 S. W. 983.] And it was not necessary for the plaintiffs to have proven that the exact result should have been anticipated by the delay. If the defendants were guilty of negligence, they were liable for all the consequences naturally resulting therefrom. [Hoepper v. Matthews, 142 Mo. 378, 44 S. W. 257.]

While the negligent act must in all cases be the proximate cause of the injury in order to hold the defendant responsible therefor, yet if the injury follows as a direct consequence of the negligent act, it cannot be said that the defendant is not responsible because the particular injury could not have been anticipated. Hoepper v. Matthews, supra. And the appellants invoke the rule just quoted and claim that the proper application of the same to the facts in this case, require the submission of the issues to the jury. We do not see anything in this rule that applies to the point now under discussion. If we give the plaintiffs the benefit of all inferences to be drawn from the evidence, and

also hold the carrier liable if the animals contracted pneumonia by reason of the negligence of the carrier in keeping them standing on the tracks, yet we are absolutely without evidence to prove that the animals contracted the disease while in the possession of any of the carriers in this case. It was not sufficient to show that the animals standing on the track, under the circumstances, were more likely to contract pneumonia, than if standing in a barn or in a car while it was moving, but it was necessary to show that the animals did contract pneumonia by reason of the fact that they were left standing on the sidetracks, as above indicated. And if the record contained evidence showing that within a few hours after the animals were exposed, the disease developed, then there would have been substantial evidence upon which the issue as to whether the animals contracted the disease while in the possession of the carrier, could have been submitted to the jury, but as there was no such evidence, the court did not err in giving the instructions complained of, and the judgment will be affirmed. All concur.