GEORGE F. HOLMAN, Respondent, v. E. E. SOUTH-
ER IRON COMPANY, Appellant.

Springfield Court of Appeals, January 3, 1911.

1. MASTER AND SERVANT: Negligence: Proximate Cause: Safe Place to Work: Injury in Operating Machinery.   Plaintiff was injured while operating a toggle machine used for bending and crimping steel sheets.   Another machine was so near as to interfere with the free operation of the toggle machine; and plaintiff, on the day of the accident, had complained to the foreman of its proximity, and the foreman had promised to remove the other machine on the next day.   The toggle machine was started by the operator putting his foot on the treadle and stopped by taking his foot off.   While so operating it a piece of sheet steel then being worked in the machine, "buckled," and plaintiff removed his foot from the treadle to stop the machine, and in so doing his foot struck a wheel on the adjacent machine.   Plaintiff lost his balance and his hands were thrown under the die of the toggle machine and his fingers were mashed.   Held, the evidence was sufficient to show that the proximity of the other machine was the proximate cause of the injury and that defendant was guilty of negligence.

2. ————: Duty of Master: Safe Place to Work.   It is the duty of the master to furnish the servant a reasonably safe place in which to work and reasonably safe appliances with which to do the master's work.

3. ASSUMPTION OF RISK: Master and Servant: Complaint by Servant.   In an action for injuries, where the evidence showed that plaintiff complained to defendant's foreman of the danger and received assurances that it would be attended to, this removes the question of assumption of risk.

4. ————: ————: Master's Negligence.   The master's negligence, if proven or conceded, eliminates the question of assumption of risk.

5. **MASTER AND SERVANT: Complaint by Servant: Not Required to Quit Work.** Plaintiff was injured while operating a toggle machine used for bending steel sheets. The injury was caused by the proximity of another machine, which interfered with the free operation of the toggle machine. The plaintiff complained of the other machine and his foreman had promised to remove it. *Held,* under the evidence that the plaintiff was not required to quit work if he reasonably believed that by the exercise of proper care he could safely operate the toggle machine.

6. **PROXIMATE CAUSE: Negligence: Personal Injuries.** The proximate cause of an injury has been defined as that cause which in the natural and continuous sequence, unbroken by an intervening cause, produces the injury and without which the result would not have happened. It is also defined as the efficient cause, or the one that necessarily sets the other causes in operation.

7. **———: Anticipating Injury: Question for Jury.** The question of the proximate cause of an injury is ordinarily one of fact for the jury, and in an action for damages for injuries caused by defendant's negligence, whether or not the injurious consequences that resulted from such negligence, are such as ought reasonably to have been foreseen, is for the jury.

8. **INSTRUCTIONS: Personal Injuries: Negligence: Future Damages.** In an action for damages for personal injuries, an instruction permitted a recovery for loss of time and damages, if any, which the jury may find from the evidence plaintiff may suffer in the future from said injuries. Defendant complained that this instruction permitted a recovery for damages not pleaded. The petition alleged that the injuries were permanent and this was established by the evidence. Under the verdict the allowance for future damages was small. *Held,* that the result reached was fair and amply warranted by the uncontradicted facts and should be upheld.

Appeal from St. Louis Circuit Court.—*Hon. G. A. Wurdeman,* Judge.

AFFIRMED.

*Watts, Williams & Dines* and *William R. Gentry* for appellant.

(1) The demurrer to the evidence should have been sustained because the evidence showed that the presence of the brick making machine was not the proxi-

mate cause of plaintiff's injury.    Recovery can be had only where the negligence complained of is the proximate cause of the injury.    Labatt on Master and Servant, sec. 810; Trigg v. Lumber Co., 86 S. W. 222; Goransson v. Mfg. Co., 186 Mo. 307; Railroad v. Kellogg, 94 U. S. 469; Henry v. Railroad, 76 Mo. 288; Doolittle v. Pfaff, 92 Ill. 301; Dolan v. Iron Co., 66 Mo. App. 545; Spiva v. Coal Co., 88 Mo. 68; Williams v. Railroad, 43 Ia. 396; Kruse v. Railway, 82 Wis. 264; Phillips v. Stone, 19 Ind. App. 341; Cowley v. Express Co., 87 Me. 352; Lamotte v. Boyce, 105 Mich. 345; Halloran v. U. I. & F. Co., 133 Mo. 470; Mathiason v. Moyer, 90 Mo. 585; Saxton v. Railroad, 98 Mo. App. 495; Killian v. Railroad, 86 Mo. App. 473; Thompson v. Railroad, 140 Mo. 125; Railroad v. Railroad, 78 Mo. App. 245; Breen v. Cooperage Co., 60 Mo. App. 202; Hudson v. Railroad, 101 Mo. 13; Koppes v. Shoe Co., 116 Mo. App. 154.    (2) The court erred in giving instructions No. 3 at the request of plaintiff, because it permits recovery for future damages not pleaded.    Plaintiff is limited to the damages he pleads and proves.    Slaughter v. Railroad, 116 Mo. 269; Mellor v. Railroad, 105 Mo. 155; Coontz v. Railroad, 115 Mo. 669; Norton v. Railroad, 99 Mo. 349.

*Rozier G. Meigs* and *John B. Dempsey* for respondent.

(1)    Instruction No. 3 for plaintiff is a correct statement of the law governing measure of damages. Sommers v. Transit Co., 108 Mo. App. 317; Rittell v. Iron Co., 127 Mo. App. 463; Curtis v. McNair, 173 Mo. 270.    (2)    The master's negligence being proven or conceded there can be no question of assumption of risk by the servant.    Wiley v. Gas Co., 132 Mo. App. 380; Warren v. Railroad, 113 Mo. App. 498; Tinkle v. Railroad, 110 S. W. 1086; Kirby v. Coal & Coke Co., 127 Mo. App. 588; Huston v. Railroad, 129 Mo. App. 576; Blundell v. Miller Co. 189 Mo. 552.    (3)    Servant need not

quit if he reasonably believes that by exercise of proper care he can safely use the appliances.    Whalley v. Coleman, 113 Mo. App. 594; Robertson v. Packing Co., 115 Mo. App. 576. (4) In action for injuries evidence that plaintiff complained to defendant foreman of the danger, and received his assurance that it would be attended to, removes the question of assumption of risk.    Fonts v. Swift & Co., 113 Mo. App. 526; Hough v. Railroad, 100 U. S. 225.    (5)    If the peril of servant is increased by negligence of the master, and the servant, knowing thereof, continues to work, and is injured, the question arising is contributory negligence, and not assumption of risk.    Dakan v. Mercantile Co., 197 Mo. 238; Rogers v. Rundell, 128 Mo. App. 14.

STATEMENT.—Respondent's attorneys have stated in their brief that the following statement appearing in appellant's brief is so fair, full and comprehensive that it is adopted as their own.    It is therefore inserted as containing the admitted facts in this case.

This is an action for damages for personal injury. The plaintiff in his petition charged the incorporation of the defendant and alleged that it was engaged in the business of manufacturing, and in such business was operating a large number of machines run by electric power; that among them was a machine known as a toggle machine used for bending and crimping steel sheets for ceiling, siding and roofing.    It is further alleged that the plaintiff was employed by the defendant, and that in the course of his employment he was required to operate the toggle machine.    It is further alleged that the defendant was guilty of negligence in permitting a certain machine known as a brick making machine  to be placed and to remain so near to the treadle of the toggle machine as to interfere with the free operation thereof, and with the safety of the operator; that said brick machine had been so placed a num-

ber of times and had been removed by the defendant on plaintiff objecting thereto.   That on March 16, 1908, while the plaintiff was engaged in operating the toggle machine, the foreman or superintendent again moved said brick making machine with its fly-wheel or pully up to within about two inches of the treadle of the toggle machine; that plaintiff objected and demanded the removal of said brick making machine and that said foreman or superintendent promised plaintiff that said machine would be removed in a short time and instructed plaintiff to continue at his work at said toggle machine in the meantime.   That on said day while the plaintiff in the course of his duty was engaged in operating said toggle machine, the sheet of steel then being worked in said toggle machine "buckled" so that the plaintiff, in order to control the operation, was obliged to quickly remove his foot from said treadle: that by reason of the proximity of said brick machine and the fly or pully wheel thereof, plaintiff was unable to quickly remove his foot from said treadle and in consequence lost his balance and his fingers came in contact with the mechanism of the toggle machine, crushing the index finger on each of his hands.   Plaintiff's injuries are then alleged in detail and his damages set forth.   The petition then proceeds as follows: "Plaintiff says that the injuries above alleged were caused as the direct and immediate result of the carelessness and negligence of the defendant's foreman or superintendent in placing said brick making machine with its fly-wheel or pully so close to the treadle of the aforesaid toggle machine as to prevent plaintiff from operating the same with safety and in failing to remove same at plaintiff's request, and in requiring plaintiff to continue at work in operating said toggle machine, while said brick making machine, with its fly-wheel or pully was in a position of danger to plaintiff."   The petition closes with a prayer for damages in the sum of four thousand dollars.

The answer consisted of a general denial, a plea of contributory negligence and a plea of assumption of risk. The reply was a general denial.

At the conclusion of the evidence, the court gave the jury instructions at the request of both sides after overruling defendant's demurrer to the evidence. The jury returned a verdict in favor of the plaintiff for the sum of $1500, which the court, after considering the motion for a new trial, reduced by a remittitur in the sum of $350. The remittitur was filed and a new judgment entered for $1150. The motion for a new trial was then overruled and the defendant appealed to the St. Louis Court of Appeals. The cause was thereupon transferred to this court. Before the argument, the appellant by its attorney expressly waived the question of the jurisdiction of this court to hear and determine the cause and the same was submitted on this agreement. Respondent's attorneys did not argue the cause, but, in writing, expressly waived all pleas to our jurisdiction.

The evidence offered by the plaintiff tended to show that he had been employed by the E. E. Souther Iron Company, which was a corporation, doing business in St. Louis at the time of his first employment and at Wellston, in St. Louis county, at the time of his injury. The Souther Iron Company makes roofing and ceiling iron, sheet iron and general iron products. Its machines are operated by electricity. Plaintiff had been employed by the defendant since about November, 1905. He operated different machines at defendant's place—a royal cap machine, a corrugater and a toggle machine. He had worked at the toggle machine different times, on and off, for a year, but not continuously, as the machine had sometimes broken down. The toggle machine is a press about fourteen feet long and standing about nine feet high. It has a bench or table that measures about thirty-six inches wide, with tables on there which makes

it about four feet six inches wide. It has an open space where the operator stands, and has a treadle for the operator. The machine is run by a clutch, and as it turns over, it clutches the gearing and that starts it and stops it. When plaintiff was hurt he was using the toggle machine and using sheets that were eight feet long and twenty-eight inches wide. It was what they called the twenty-eight inch guage, a very thin grade of sheet iron. When the operator would put his foot on the treadle of the machine, the die would come down. The treadle has a quick clutch and when one's foot touches it slightly it will operate. The machine was stopped by taking the foot from the treadle. When the foot was once pressed on the treadle, the machine would continue to operate until it was released by the raising of the foot. The treadle was then held down by the operator's foot while the machine was in motion and in case it was necessary to stop the machine the foot had to be lifted off the treadle. The treadle would fly up the instant it was released by the foot. If the machine had to be stopped quickly it was necessary to take the foot off the treadle quickly. The treadle was just large enough to afford good foot room. It had a smooth, square surface on top of which the operator put his foot. When he did that, it would come down and that pulled the clutch and the gear turned around and the upper die came down. The upper die would then press the galvanized iron into the desired shape. The sheets of galvanized iron were pushed in by the plaintiff's fellow-servant, called his "partner," from the opposite side of the machine. When the sheet was placed and in readiness, the plaintiff would put his foot on the treadle and the pressure of his foot on the treadle pressing it down once would make the clutch reverse and make the die come down. The die would then make one revolution, no matter if plaintiff immediately released the pressure on the treadle, but after making one revolution if there was no further pressure on the treadle the die would

stop. It would then remain still until the operator touched the treadle with his foot.

The defendant was just moving into its new factory at the time of the accident and had not yet succeeded in getting everything in order. They were engaged in setting up things where they belonged. On two different occasions a few days preceding the accident, the plaintiff found that somebody had placed the brick making machine so near to the toggle machine as to interfere with the operation thereof with safety to the operator; and on these occasions he complained and the superintendent told him to move the brick making machine. Plaintiff with the assistance of some fellow-workmen did so on more than one occasion. On the day of the accident, however, he found the brick making machine had again been placed too near the toggle machine, so that the pully on the top side of the brick making machine was too near the treadle of the toggle machine, so near that plaintiff was afraid that some accident might result to him. He therefore again complained to the superintendent that the brick making machine was in his way, and the superintendent said: "Well, George, that is not very dangerous, that machine setting there; you go ahead and be careful and make that order up that has to go out at once, the people are in a hurry for it, and I will move the machine tomorrow. I will move it out of the way for good then." Plaintiff testified that he took all the precautions he could; that the pully of the brick machine was within about four inches of the treadle on which he had to place his foot. That he proceeded with the work at the toggle machine and had handled about one hundred sheets on the machine before the accident happened. A sheet had been placed through the machine and plaintiff was holding it in position for the die to strike it, and all at once it "buckled"; that is, the sheet was caused to spring up in the middle. This frequently happens and when it did it was necessary for the operator to remove his foot

from the treadle as quickly as possible. He testified that when the sheet "buckled" and he lifted his foot off the treadle, his foot struck the pully of the brick machine, which threw his foot back onto the treadle of the toggle machine again, kept it in motion, and plaintiff lost his balance and threw himself backward as far as he could but the descending die caught his fingers and injured them quite severely. As plaintiff stood upon the floor the treadle of the toggle machine was a little to his right. The brick machine was still further to the right of the treadle; that is to say, the pully of the brick machine was still further to the right. The pully of the brick machine was the only thing that plaintiff complained of that gave him any trouble; it was the only thing about the brick machine that he claimed was in his way. There was ample room immediately back of it. Plaintiff testified in cross-examination that he was not watching his foot and could not tell exactly whether he had started the treadle down and had his foot on the treadle when the galvanized iron sheet "buckled" or not. The die had started down when he discovered that the sheet had "buckled." The die would then descend and make one revolution no matter whether plaintiff's foot remained on or off the treadle. Defendant had but one witness who saw the accident and he was situated so that he could not tell much about it. He said it seemed to him as if plaintiff slipped.

NIXON, P. J.—I. The appellant's principal contention in its assignment of errors is that its demurrer to the evidence should have been sustained because the evidence showed that the presence of the brick making machine was not the proximate cause of the plaintiff's injury and that recovery could only be had where the negligence complained of was the proximate cause of the injury.

It is the duty of the master to furnish the servant a reasonably safe place and reasonably safe appliances

in which and with which to do the master's work. [Doyle v. Missouri, K. & T. Trust Co., 140 Mo. 1, 41 S. W. 255; Minnier v. Sedalia, W. & S. W. Ry. Co., 167 Mo. 99, 66 S. W. 1072; Loehring v. Westlake Const. Co., 118 Mo. App. 163, 94 S. W. 747; Bloomfield v. Worster Const. Co., 118 Mo. App. 254, 94 S. W. 304; Seals v. Whitney, 130 Mo. App. 412, 419, 110 S. W. 35; Rigsby v. Oil Well Supply Co., 130 Mo. App. 128, 108 S. W. 1128; Bokamp v. Chicago & A. R. Co., 123 Mo. App. 270, 283, 100 S. W. 689.]

In this case, the admitted evidence shows that the master was fully informed of the nature of the danger of allowing the brick machine to remain in proximity to the toggle machine on which plaintiff was at work. The plaintiff himself on the day of the accident complained to the superintendent of the defendant company that the brick machine was in the way, to which the superintendent replied: "Well, George, that is not very dangerous, that machine setting there; you go ahead and be careful and make that order up that has to go out at once, the people are in a hurry for it, and I will move the machine tomorrow. I will move it out of the way for good then." In an action for injuries where the evidence shows that plaintiff complained to defendant's foreman of the danger and received assurances that it would be attended to, this removes the question of assumption of risk. [Fouts v. Swift & Co., 113 Mo. App. 526, 88 S. W. 167; Hough v. Railroad, 100 U. S. 213, 225.] Under the circumstances disclosed in this record the plaintiff as servant need not have quit his work if he reasonably believed that by the exercise of proper care he could safely use the appliances furnished. [Blundell v. Miller Elevator Mfg. Co., 189 Mo. 552, 88 S. W. 103; Whaley v. Coleman, 113 Mo. App. 594, 88 S. W. 199; City of Owensboro v. Gabbert (Ky.), 122 S. W. 178.]

In this case the evidence conclusively shows that the machine plaintiff operated was one in which the sheets of steel sometimes "buckled," and that it then

became necessary for the operator to stop the machine quickly in order to save the piece of steel from being destroyed. This the operator accomplished by quickly removing his foot from the treadle of the machine, but when the foot was removed, the die of course came down onto the plate, but it would then stop because the motive power had been removed by the operator lifting his foot from the treadle. The evidence further shows that the customary and usual way for the operator to remove his foot from the treadle was by a quick movement to the right of the treadle, thus leaving the operator with his feet spread somewhat apart in order to balance himself, while with his arms outstretched he handled the sheet of steel before him. From the construction, and movement of the machine by applying the foot to the treadle, the machine was necessarily suddenly stopped by the foot being removed, and the movement was necessarily a quick one. The "buckling" of the plate in the machine was not a common occurrence but an emergency. In attempting to make the rapid movement to stop the machine, the plaintiff drew his foot off the treadle in the usual and customary way, but instead of his foot coming off the treadle and onto the floor, it struck against the pully wheel of the brick machine; this unexpected interference threw the plaintiff off his balance and his arms and torso were thrown forward and his arms went under the die. Realizing his danger, he concentrated his strength of body and will and drew back towards safety. His arms and hands were out from under the die, but his finger tips were caught and crushed. The injury having occurred under these circumstances, is the appellant justified in its claim that the injury was not the proximate result of the nearness of the brick machine? "Proximate cause" has received at the hands of the courts many definitions. The proximate cause of an injury has been defined as that cause which in the natural and continuous sequence unbroken by an intervening cause produces the injury and with-

out which the result would not have happened. [Saxton v. Mo. Pac. Ry. Co., 98 Mo. App. 494, 72 S. W. 717.] It has otherwise been defined as the efficient cause or the one that necessarily sets the other causes in operation. [Frisbie v. Fidelity & Cas. Co., 133 Mo. App. 30, 112 S. W. 1024; Harper v. St. Louis, M. B. T. Co., 187 Mo. 575, 86 S. W. 99; Lawrence v. Heidbreder Ice Co., 119 Mo. App. 316, 93 S. W. 897.] As was said by this court in the case of Gillespie v. Louisville & N. R. Co., 144 Mo. App. 508, 129 S. W. 277: "While the negligent act must in all cases be the proximate cause of the injury in order to hold the defendant responsible therefor, yet, if the injury follows as a direct consequence of the negligent act, it cannot be said that the defendant is not responsible because the particular injury could not have been anticipated." It might be said in this case that plaintiff would not have received his injury unless he lost his balance in the operation of the machine and that he might have lost his balance even though his foot had not touched the pulley wheel of the brick machine, or even if there had been no brick machine in the building, or even if the plate of steel had not "buckled," or even if plaintiff had not been engaged in stopping the machine, but we think this would be begging the question. He was operating the machine and by reason of the mischance in the slipping of his foot the dangerous proximity of the brick machine directly caused his injury. We cannot state the unanswerable reply to the appellant's position that the slipping of plaintiff's foot from the treadle and its contact with the brick machine was the proximate cause of the injury in more apt or cogent language than that of Judge SMITH in the case of Musick v. Dold Packing Co., 58 Mo. App. l. c. 333, which was an action by plaintiff for damages due to slipping into defendant's uncovered tank. In that case, as in this, the defendant contended it was not liable because the slipping was the proximate cause of the injury. The reply of the court

was as follows: "It is true that if the plaintiff had not slipped his limb would not have been plunged into the hot water tank. It is equally true, that though he slipped, the disaster would not have overtaken him had not the tank been uncovered. The slipping was not the sole cause of the injury. The latter would not have occurred except for the presence and co-existence of both causes. The cause of the plaintiff's slipping was altogether accidental. If it was the sole cause of the injury the defendant is not liable. But the injury would not have resulted had not another cause combined with the accidental cause. If the plaintiff was in the exercise of ordinary care and prudence at the time he slipped and the injury is attributable to the absence of the cover over the tank together with the slipping, then the plaintiff should recover. If the direct and proximate cause of the injury was the uncovered and unprotected condition of the tank, then plaintiff would be entitled to recover though the slipping of the plaintiff contributed to the injury." And as said in the case of Trout v. Laclede Gas Light Co., decided at this term of this court: "It has also been held that if one, by some involuntary mischance, precipitates a casualty resulting in injury to himself, but was exposed to danger of the casualty of another's negligence, the law does not always construe his own mischance, instead of the prior negligence of the other party, to be the proximate cause of the injury, and shut him off from recovery. Whether the injured party will be denied relief depends on whether he himself was guilty of negligence that proximately caused the harmful accident." Of course, in the case now under consideration, if the slipping and falling were the result of the negligence of the plaintiff, there could be no recovery, but the proof of such negligence, being an affirmative defense, rests upon the defendant, and the law will not presume the negligence of the plaintiff in the absence of evidence to that effect. The question of the proximate cause of an injury is

ordinarily one of fact for the jury; and in an action for damages for injuries caused by defendant's negligence, whether or not the injurious consequences that resulted from such negligence are such as ought reasonably to have been foreseen is for the jury. [29 Cyc. 639.] Under these authorities and the admitted evidence in this case, the appellant's demurrer to the evidence was properly overruled. The master's negligence, if proven or conceded, eliminates the question of assumption of risk. [Wiley v. St. Joseph Gas Co., 132 Mo. App. 380, 111 S. W. 1185; Warren v. Chi. B. & Q. R. Co., 113 Mo. App. 498, 87 S. W. 585; Tinkle v. St. L. & S. F. R. Co., 212 Mo. 445, 110 S. W. 1086; Kirby v. Manufacturers Coal & Coke Co., 127 Mo. App. 588, 106 S. W. 1069; Huston v. Quincy, O. & K. C. R. Co., 129 Mo. App. 576, 107 S. W. 1045; Blundell v. Miller Elevator Mfg. Co., 189 Mo. 552, 88 S. W. 103; Strickland v. Woolworth & Co., 143 Mo. App. 528, 127 S. W. 628; George v. St. L. & S. F. R. Co., 225 Mo. 364, 125 S. W. 196.]

II. The court at the request of the plaintiff gave the following instruction as to the measure of damages.

"3. The court instructs you that if you find for plaintiff, you should, in estimating his damage, consider his physical condition before and since receiving the injuries for which he sues, as shown by the evidence, the physical pain and anguish, if any, suffered by him on account of his injuries, as shown by the evidence, *his loss of time and damages, if any, as you may, from the evidence, find it reasonably certain he will suffer in the future therefrom,* and you will find a verdict for such sum as in your judgment will, under the evidence, reasonably compensate him for such injuries, not to exceed the sum of $4000."

The giving of this instruction is assigned as error by appellant because it permits a recovery for damages not pleaded and because it does not limit the plaintiff's damages to the amount claimed in the petition and be-

cause it broadens the issues made by the petition. An examination will show that this instruction was taken word for word in its essential parts from the case of Curtis v. McNair, 173 Mo. l. c. 290, 73 S. W. 167, omitting the clause referring to expenses incurred for medical treatment, and as was said in that case: "The objections offered to this instruction are two, viz: That 'it entitled plaintiff to recover damages for his loss of time in the future,' and that it authorized a recovery for 'sums that he expended for medical treatment.' These objections are founded on the idea that no claim is made in the petition for such items of damage. We do not understand the instruction to call for an estimate of loss of time in the future, but for damages which the jury may find that it is reasonably certain the plaintiff will suffer in the future. There is a statement in the petition that the plaintiff is permanently injured and there was evidence tending to sustain that statement." The claim is also made in the present case in the petition that plaintiff's injury was permanent and the evidence abundantly tended to sustain such allegation. The evidence showed that plaintiff earned from ten to twelve dollars a week—of five and one-half days —before he was hurt; that he was idle three months by reason of his injuries and since then had earned only seven and one-half dollars a week—of six days; the evidence further showed that he sustained a loss of thirteen weeks at an average of eleven dollars a week, or a total loss of one hundred and forty-three dollars; also, a further loss of five dollars a week for two years, or one hundred and four weeks up to the date of the trial, amounting to $520, showing a total loss in wages sustained by reason of his injury up to the date of the trial of the sum of $663. The verdict returned by the jury was for $1500, which the court reduced to $1150, leaving only the sum of $487 as compensation for his pain and suffering, physical and mental, and for his damages for the permanent injury alleged and proved.

Every successive step in this litigation will stand the closest legal scrutiny and discloses a conscientious regard by the trial court for appellant's legal rights. The result reached is in every way a fair and just one and is amply warranted by the uncontradicted facts in the case. The judgment is accordingly affirmed. All concur.